BOARD OF EDUCATION OF ABERDEEN-HUNTINGTON LOCAL SCHOOL DIST., APPELLEE, *v.* STATE BOARD OF EDUCATION, APPELLANT.*

(No. 271—Decided August 13, 1962.)

Mr. *Richard F. Liggett*, prosecuting attorney, and Mr. *Hugh E. Kirkwood, Jr.*, for appellee.

Mr. *Mark McElroy*, attorney general, and Mr. *Victor S. Krupman*, for appellant.

RADCLIFF, P. J.   Throughout this opinion the Board of Education of Aberdeen-Huntington Local School District, the appellee herein, will be referred to as "local board" and the State Board of Education, the appellant herein, will be referred to as "state board."

By letter dated July 12, 1960, the state board informed the local board that the minimum standards for Ohio high schools

---

*Motion to certify the record overruled, March 6, 1963.   Appeal dismissed, 174 Ohio St., 321.

had not been met in 21 specific instances by the Aberdeen-Huntington Local High School. The state board in the same letter informed the local board that the high school charter would be revoked no earlier than June 30, 1961, unless the local board, within 30 days, requested a hearing upon such revocation. On August 4, 1960, the local board by letter informed the state board that it was requesting a hearing on the proposed revocation. The hearing requested by the local board was had before a referee of the state board on September 7, 1960, September 30, 1960, and October 14, 1960. (This is the hearing provided by Section 119.09, Revised Code.)

On or about April 5, 1961, the referee before whom the hearing was held filed his written report with the state board including his recommendation that the charter of the Aberdeen-Huntington Local High School be revoked. At the meeting of the state board on July 12, 1961, a resolution was adopted revoking the charter of the Aberdeen-Huntington Local High School as of June 30, 1962.

The local board appealed to the Common Pleas Court of Brown County from that order of revocation of the charter by the state board. On November 28, 1961, the Common Pleas Judge of Brown County filed an opinion wherein he found that the alleged failures to meet minimum standards set forth as the basis for revocation of the charter were not supported by reliable, probative, and substantial evidence, and directed that the order of the state board revoking the charter be reversed and vacated. The judgment entered pursuant to the opinion just referred to is the final order from which the state board prosecutes this appeal.

The state board urges five assignments of error as follows:

1. In erroneously construing and interpreting Standards II F, IV A, VIII E, IX B, IX G, XIV D, XVII A, and XXI A of the minimum standards for Ohio High Schools and Sections 3301.16, 3319.30 and 3319.31 of the Revised Code.

2. In finding the order of the state board supported by the evidence and then proceeding to reverse such order.

3. In substituting its judgment for that of the State Board of Education.

4. In finding that the order of the State Board of Education is not supported by reliable, probative and substantial evidence.

5. In other errors apparent in the record, the opinion and the entry.

Before we dispose of the assignments of error, it is deemed best to give some history of the status of schools, both elementary and secondary, in the state of Ohio. This is not an exhaustive study and we do not intend it to be, but we must include it in order to fully comprehend the questions before us.

In the Constitution of Ohio, 1851, the following reference is made to education in Section 7, Article I, the Bill of Rights:

"Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the General Assembly to pass suitable laws, to protect every religious denomination in the peaceable enjoyment of its own mode of public worship, and to encourage schools and the means of instruction."

Article VI of the Constitution, titled "Education" and containing four sections, reads as follows:

"1. The principal of all funds, arising from the sale, or other disposition of lands, or other property, granted or entrusted to this state for educational and religious purposes, shall forever be preserved inviolate, and undiminished; and, the income arising therefrom, shall be faithfully applied to the specific objects of the original grants, or appropriations.

"2. The General Assembly shall make provisions by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state; but, no religious or other sect, or sects, shall ever have any exclusive right to, or control of, any part of the school funds of this state.

"3. Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds: provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts. (Adopted September 3, 1912.)

"4. There shall be a State Board of Education which shall be selected in such manner and for such terms as shall be provided by law. There shall be a Superintendent of Public In-

struction, who shall be appointed by the State Board of Education. The respective powers and duties of the board and of the superintendent shall be prescribed by law." (Amended November 3, 1953.)

Section 4, Article VI, in the form above quoted has been in effect since November 3, 1953. The amendment creating the State Board of Education was placed on the ballot pursuant to Senate Joint Resolution No. 30 adopted by the 100th General Assembly of Ohio. (125 Ohio Laws, 1088.) The vote by which Section 4 of Article VI was amended to create the State Board of Education was, "Yes," 913,134, "No," 693,624. (125 Ohio Laws, 1105.) After the constitutional amendment was adopted, the Legislature proceeded to provide for the election of the State Board of Education and to give to it the jurisdiction and authority concomitant with its duties and powers specified in the Constitution. This was accomplished in Amended House Bill 212 adopted by the 101st General Assembly to take effect on January 3, 1956. (126 Ohio Laws, 655, 662.)

This brief resume can lead to but one conclusion—that the control of schools, be they public or private, providing elementary and secondary education for the youth of Ohio, reposes in the Legislature of our state. When the General Assembly speaks on matters concerning education it is exercising *plenary* power and its action is subject only to the limitations contained in the Constitution. An examination of the Constitution reveals that the only prohibition in the Constitution concerning the exercise of this power over elementary and secondary education is as to religion, *i. e.*, the release of public school funds to control by a religious group or sect is prohibited. We can, therefore, indulge in generalities and make a broad statement to the effect that the Legislature of Ohio, in passing laws concerning elementary and secondary schools, is restrained only by its own conscience, fear of the electorate, and one section of the Constitution. See 48 Ohio Jurisprudence (2d), 384, Section 3.

We now turn to the provisions of Amended House Bill 212 as affecting the creation and authority of the State Board of Education. Certain sections of the Act pertaining to public schools became effective on January 3, 1956, and other sections became effective immediately by virtue of being passed as an

emergency measure. The legislation was not signed by the Governor nor was it vetoed, so the effective date of those sections designated in the emergency clause is July 12, 1955. (126 Ohio Laws, 698.) The section with which we are most concerned in this litigation is Section 3301.07 of the Revised Code, titled "Powers of State Board." Paragraph D of Section 3301.07 directs the State Board of Education to establish minimum standards to be applied to all elementary and high schools in the state, the objective being to provide a high quality of general education in Ohio. Upon this depends the right of the schools to be chartered or not. Pursuant to the directive of paragraph D of Section 3301.07 the State Board of Education directed that minimum standards be established for elementary and high schools within the state. The standards for high schools were published by the State Board of Education and became effective on January 1, 1958. In some instances the standards were a paraphrase of the statute, while others were the result of recommendations of experts after gathering the best information available. (There is no attack in this case on the minimum standards as to compliance with Sections 119.01 through 119.04, Revised Code.) These standards are designated as "minimum" standards, all of which must be met to entitle a school to retain its charter and participate in the distribution of state funds for the maintenance and operation thereof.

We have traveled a long, round about way but we are about to reach the problem before us. We must make one further detour and that is to determine the nature and extent of the jurisdiction of reviewing courts, Common Pleas and appellate, in appeals provided for by Section 119.12, Revised Code. This section provides for appeals from administrative bodies of the state and is a part of Chapter 119, Title I, of the Revised Code, entitled, "Administrative Procedure." For a time there was some question as to what courts could do in reviewing the findings and orders of administrative agencies of the state government. We feel, however, that the following decisions dispose of this uncertainty, and that the powers and duties of the several Courts of Common Pleas and Courts of Appeals have been spelled out and are now well established by *Katz* v. *Dept. of Liquor Control*, 166 Ohio St., 229; *State Racing Commission* v. *Robertson*, 111 Ohio App., 435; *Henry's Cafe, Inc.,* v. *Board of*

*Liquor Control,* 170 Ohio St., 233; and *Diltz* v. *Crouch, Dir.,* 173 Ohio St., 369.

We now turn to the assignments of error urged by the appellant. We will treat the first four assignments of error as raising the same question. In the opinion of the Judge of the Court of Common Pleas of Brown County the question of the constitutionality of portions of Chapter 3301 of the Revised Code was raised but avoided in the decision. We feel that this question can be answered by saying that there is no constitutional infirmity in any of the sections of Chapter 3301 involved in this litigation. We need only recall that the Legislature of this state has plenary power in all matters affecting elementary and secondary education in the state and is subject only to the prohibition against surrender of control of state school funds to religious or sectarian groups. The question of improper delegation of authority to the State Board of Education is not a real question as we are dealing with a legislative body clothed with almost unlimited power, which it may delegate to an agency it creates in following a constitutional mandate, as long as the Legislature retains the power to withdraw that authority.

The Common Pleas Judge, in reviewing the question of minimum standards, said that he reached his conclusion entirely upon issues of fact, that he passed upon no questions of law, and that he did not interpret any of the statutes or regulations promulgated by the State Board of Education. He examined each one carefully and then came to the conclusion that the Aberdeen school either substantially complied with the requirements of the minimum standards or was in no worse condition than dozens of other schools throughout the state. In some instances he found that there was no violation of the minimum standards, particularly as to the failure of the Brown County Board of Education to provide a prescribed graded course of instruction approved by the state board. True, this is the duty of the county board of education and not the local board. Regardless of who failed to perform the duty, failure is admitted, and this must be recognized as another instance wherein the standards were not met by the local school.

No good purpose will be served by reviewing each alleged failure to meet the minimum standards, but we must refer to at least two more. The first has to do with infringement by the

high school on the elementary school, a violation of Standard II C. There is evidence in the record that the high school does infringe upon the elementary school, both physically and economically, when you give to these words their generally accepted meaning.

Second, there can be no question as to the failure of the school to meet Standard XVII A, in that teachers were instructing in subject-matter fields in which they were not and could not be legally certified. This fact was admitted in the record.

We can readily understand the feeling of the trial judge and appreciate the conclusions he reached. Were we to do as he must have done—write from the heart instead of the head— I am quite sure that our conclusions would be the same as his. Our sympathies certainly lie in that direction; however, the law indicates that this is not proper and that the control of schools is and always has been vested in the Legislature of our state and not in the local school boards. The doctrines of substantial compliance or comparative compliance with the minimum standards do not apply here. It is incumbent upon local boards and local high schools to scrupulously meet these minimum requirements. The standards have not been met and there is evidence in this record, be it substantial, reliable, or probative, that deficiencies do exist. The reason such deficiencies do exist is not for us to determine. See 48 Ohio Jurisprudence (2d), 385, Section 4. We surmise that it is lack of funds. The only way these deficiencies may be removed is to provide adequate funds. Both the reins of power and the purse strings are in the grasp of the Legislature. This same Legislature should remember that when standards are raised the purse strings must be loosened proportionately as nonincome producing real estate (homes) and low-income producing real estate (farms) are now being taxed beyond the owners' ability to pay. The Legislature has reached the point of no return. It soon must face a moment of truth on this score and realize that an increase in the state's contribution to local school districts is long overdue.

The fifth assignment of error is not well taken.

We regretfully say that the first four assignments of error are well taken. The judgment of the Common Pleas Court is,

therefore, reversed, and we enter the judgment which the Court of Common Pleas should have entered and re-instate the order of the state board.

*Judgment reversed.*

COLLIER and BROWN, JJ., concur.