MROCZEK V. BD. OF EDUCATION OF THE BEACHWOOD CITY
SCHOOL DISTRICT ET AL.

[Cite as Mroczek v. Bd. of Edn. (1979), 61 Ohio Misc. 6.]

(No. 78-991,520—Decided November 7, 1979.)

Court of Common Pleas of Cuyahoga County.

*Messrs. Gold, Rotatori, Messerman & Schwartz,* and *Mr. Niki Z. Schwartz,* for plaintiff.

*Messrs. Gallagher, Sharp, Fulton, Norman & Mollison* and *Mr. William A. Viscomi,* for defendants Weiss and Holloway.

*Messrs. Squire, Sanders & Dempsey* and *Ms. Maryann Gall,* for defendant Bd. of Education.

FRIEDMAN, J. This action was filed by a public school teacher seeking injunctive and monetary relief from the action of the superintendents of her school district removing her from her position and duties as a regular classroom teacher and reassigning her to permanent, floating substitute status. The plaintiff contends that her "reassignment" constituted an effective removal from her position without notice, hearing or proof of charges contrary to her rights as a continuing contract teacher under R. C. 3319.08 to 3319.18.

Defendants have moved for summary judgment, contending *inter alia* that their reassignment of the plaintiff was legally authorized by R. C. 3319.01.

The undisputed facts as revealed by the affidavits of the parties filed respectively in support of, and in opposition to, the motion are as follows:

Plaintiff Waltina Mroczek has been employed as a public school teacher by the defendant Beachwood Board of Education since the 1957-58 school year. In April of 1960, she was

given continuing contract status (also known as tenure) pursuant to R. C. 3319.16. From the time of her initial employment in 1957 until the 1978-79 school year, she was, without exception, assigned each year as a regular classroom teacher to teach a particular class of students.

Prior to August 1, 1978, defendant Superintendent Robert Holloway decided to remove plaintiff from her regular classroom assignment and to make her "a permanent substitute teacher, also described as an itinerant teacher or floating teacher" [his words] due to alleged deficiencies in her teaching performance. Although defendant Bernard Weiss replaced defendant Holloway as Superintendent on August 1, 1978, he allowed Holloway's decision with respect to plaintiff to be implemented for the 1978-79 school year.

During the 1978-79 school year, plaintiff was shifted from class to class and school to school on a daily basis in her capacity as a permanent substitute. On frequent occasion (at least 27 of the 157 days shown on the assignment schedule), she was not assigned to any class. As a result of plaintiff's removal from a regular classroom assignment and reassignment to permanent substitute duties, she suffered humiliation and a loss of prestige and professional status in the eyes of her faculty colleagues, parents of students and members of the community. Further, she was required to perform the different and more onerous duties of teaching multiple classes of students with whom she had little opportunity to establish a relationship, was unable to adequately prepare in advance for unanticipated assignments, was exposed to the increased discipline problems that students create for substitute teachers, and was deprived of the opportunity to establish a meaningful, continuous relationship with the faculty of any single school.

On these facts, the primary issue raised by defendants' motion for summary judgment is whether a continuing contract teacher may be removed from her regular classroom teaching assignment and assigned over her objections to be a permanent substitute, itinerant or floating teacher without notice and hearing. Because this issue appears to be one of first impression in Ohio, the court deems it desirable to set forth the reasons and authorities upon which it has relied in arriving at its decision.

The defendant superintendents assert that their action is authorized by R. C. 3319.01 which provides in pertinent part:

"The superintendent of a local, city, county or exempted village school district shall be the executive officer for the board. *Except as otherwise provided in this section for local school districts, he shall direct and assign teachers and other employees of the schools under his supervision\*\*\*.*" (Emphasis added.)

Although this section on its face would seem to vest unlimited assignment authority in the superintendent, it has been recognized that the section is limited by, and must be read *in pari materia* with, the other provisions of the school code. Accordingly, a superintendent's general assignment authority has been held to be qualified by those sections of the code governing teacher certification so as to preclude the assignment of a teacher to an assignment for which she has not been properly certified. *Board of Education of Aberdeen-Huntington Local School District* v. *State Board of Education* (1962), 116 Ohio App. 515. See, also, 1958 O.A.G. 450, No. 2457.

In the instant case, this court must consider the impact of the Ohio Teacher Tenure Law (R. C. 3319.08 to 3319.18) on the superintendent's general power of assignment. This 1941 enactment sets forth the substance and procedure for making decisions regarding the contract status of teachers, including the hiring, re-employment, conferring of continuing contract status and termination of same. Shortly after the Act's enactment, the Supreme Court had occasions to describe its purpose and its proper mode of construction in *State, ex rel. Bishop,* v. *Bd. of Education of Mt. Orab Village School District* (1942), 139 Ohio St. 427:

" 'The very laudable purpose of this Act was to insure to the teachers some measure of security in their important work and to free them, at least to a measurable extent from the "vicissitudes of politics" or the likes and dislikes of those charged with administration of school affairs.

" 'Such being the manifest purpose of the Act it should be liberally construed in favor of the teachers, who constitute the class designated to be its primary beneficiaries.' " *Id.,* at 439.

The Act seeks to achieve this objective through R. C. 3319.11 which prescribes the procedure by which a teacher attains continuing contract status, and R. C. 3319.16 which provides in pertinent part:

"The contract of a teacher may not be terminated except for gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause.***"

The latter section then prescribes the procedure for termination which accords the teacher the full panoply of due process rights including written notice of charges, time to prepare a defense, a hearing, representation by counsel, compulsory attendance of witnesses, cross-examination, transcription and ultimately appeal to an independent judiciary.

In the instant case, the plaintiff attained continuing contract status as a teacher in 1960 pursuant to R. C. 3319.11 and was assigned to a regular and specific classroom teaching position for each year thereafter until she was removed from her regular assignment and made a permanent substitute for the 1978-79 school year. That reassignment effectively deprived her of virtually every form of reward and professional satisfaction indigenous to her profession with the exception of her salary.

It would make a mockery of the continuing contract rights of the plaintiff and others similarly situated if superintendents were to be permitted to subject them to the burdens and humiliation of removal from regular classrooms and assignment as itinerant substitutes. Judicial approval of this type of consignment to the Siberia of the teaching profession would permit school boards and superintendents to put pressure on undesired, tenured teachers to resign or prematurely retire, thereby effecting their ouster without the necessity of the procedures prescribed in R. C. 3319.16. In this fashion, boards and superintendents would be permitted to accomplish indirectly what the law prohibits them from doing directly. Such a scheme hardly comports with the liberal construction prescribed by the Supreme Court in the *Bishop* case for the purpose of freeing teachers from the vicissitudes of politics or the likes or dislikes of those charged with the administration of school affairs.

Defendants' conversion of plaintiff from regular to substitute status further conflicts with other provisions of the school code which carefully distinguish between the employment of regular and substitute teachers. Compare R. C. 3319.07, employment of teachers, and R. C. 3319.08, teacher employment and re-employment contracts, with R. C. 3319.10, employment and status of substitute teachers.

Although no Ohio Court has yet had occasion to address the issue posed by the facts of the instant case, the decisional law of other jurisdictions which have addressed the issue points to the same conclusion. The appropriate construction of teacher tenure laws was cogently articulated in *Verrett* v. *Calcasieu Parish School Board* (La. App. 1956), 85 So. 2d 646, where the court declared:

"the tenured teacher is protected from disturbance not only by change in salary, but also by transfer to unpleasant duties, or duties not of the particular type of teaching position or status which the teacher has attained'.*** For a school board could thus indirectly accomplish the removal of a tenured teacher from the school system although unable to do so directly by proven charges." *Id.*, at 648.

Similarly, in *Lewis* v. *Board of Education of Johnson County* (Ky. 1961), 348 S.W. 2d 921, the court held: "The statutory method [of contract termination] should be used rather than the indirect means of unworthy or undesirable reassignment." *Id.*, at 923.

Upon just such reasoning, the courts of other jurisdictions have invalidated as demotions inconsistent with tenure laws reassignments from guidance counseleor to classroom teacher, *Otto* v. *Davie* (1973), 34 Cal. App. 3d 570, 110 Cal. Rptr. 114; from senior high physical education teacher to junior high physical education teacher where the teaching of the subject differed materially in the two schools, *Hodge* v. *Board of Education of City of San Bernadino* (1937), 22 Cal. App. 2d 341, 70 P. 2d 1009; from regular classroom to home teaching duties, *Finot* v. *Pasadena City Board of Education* (1967), 250 Cal. App. 2d 189, 58 Cal. Rptr. 520; from principal to director of guidance services and adult education, *Aswell* v. *Jackson Parish School Board* (La. App. 1965), 176 So. 2d 741; and from the upper grades of a public school to a

rural, ungraded school which had no band for a teacher who had been a band instructor, *Smith* v. *School District No. 18, Pondera County* (Mont. 1943), 139 P. 2d 518.

Although the statutes of the other jurisdictions cited may differ in particular respects from our own, the decisions cited are relevant and persuasive in light of the common purposes of teacher tenure laws. As articulated by the court in *State ex rel. Bass* v. *Vernon Parish School Board* (La. App. 1940), 194 So. 74:

"It is true that the statutes of California and New York are not identical to the statute of this State, but the purpose for which they were enacted is the same; that is, to insure security to teachers in the position, grade or status which they have attained, and not merely to insure them teaching employment." *Id.*, at 76.

To hold otherwise, the court reasoned, would mean that:

"***his removal from office could thus be effected indirectly when it admittedly could not be effected directly." *Id.*

One of our most valued constitutional rights in a democracy is due process. This is in effect the principle as set forth by the Supreme Court in the case of *Mt. Orab Village School District, supra.*, in that the legislature in adopting the tenure law for teachers gave them protection from the personal whims of a school administration and the machinsions that can arise from politics in a school system. One should be entitled to know the whys and wherefores of a change in his or her position and to be able to present his or her side with relation thereto. This in essence constitutes a democratic procedure and so intended by the enactment of meaningful tenure by the legislature of the state of Ohio. To reduce the status of a teacher who has earned tenure in accordance with the provisions of the statute by the assertion of the school administrator that the teacher has alleged deficiencies in her teaching performance without notice and hearing is a violation of the teacher's due process.

It would make a farce of the protections guaranteed by the Ohio Teacher Tenure Law if this court were to permit defendants to remove the tenured plaintiff from a regular classroom teaching assignment and ship her to the salt mines

of the teaching profession, and thus, defendants are not entitled to summary judgment upon the raw assertion that the general assignment authority granted by R. C. 3319.01 immunizes their conduct from this court's scrutiny.

As an alternative ground for summary judgment, defendants Holloway and Weiss contend that they are immune from tort liability resulting from negligence or mistake upon the authority of such cases as *Bd. of Director of Sub-school District No. 7* v. *Burton* (1875), 26 Ohio St. 421; *Hall* v. *Columbus Board of Education* (Franklin Co. 1972), 32 Ohio App. 2d 297; and *Carroll* v. *Lucas* (Hamilton Co. C. P. 1974), 39 Ohio Misc. 5. However, immunity from liability in damages would not immunize defendants from this court's equitable jurisdiction to grant injunctive relief against their illegal conduct. Moreover, none of the cases cited are factually relevant to the instant case and none holds that school officials have absolute immunity from liability. Indeed, the quotations cited by defendants acknowledge that school officials are not immune from liability for harm inflicted deliberately or maliciously. See, for example, the second headnote in *Hall* v. *Columbus Board of Education, supra:*

"School and school district officers are not liable for the negligence of their employees in the absence of any statutory provision imposing such liability, and *while school officials, teachers, and employees may be liable for malicious or deliberate harm or injury to other persons,* they are not liable for torts committed in the performance and within the scope of those duties involving the exercise of judgment and discretion." (Emphasis added.) See also, *Gregory* v. *Small* (1883), 39 Ohio St. 346; and 1954 O.A.G. 294, No. 3917, holding school officers liable for the wrongful discharge of teachers unless they acted in good faith and without corrupt intention. Plaintiff having alleged malice and bad faith in her complaint, the factual issue of the mental state of the defendants is one that is classically to be resolved by the finder of fact after observing the demeanor of the witnesses, rather than by the court upon summary judgment. *Duke* v. *Sanymetal Products Co., Inc.* (Cuy. Co. 1972), 31 Ohio App. 2d 78, See also, *Poller* v. *Columbia Broadcasting System* (1962), 368 U. S. 464, 473; and *Williamson* v. *Wilbur-Rogers, Inc.* (C.A. 6, 1967), 381 F.

2d 719, 721, interpreting the federal summary judgment rule, which is virtually identical to Rule 56 of the Ohio Rules of Civil Procedure.

Finally, defendant Weiss asserts that he is entitled to summary judgment because he did not participate in the original decision made by his predecessor prior to his assuming the office of Superintendent on August 1, 1978. However, he was Superintendent for a period of 37 days prior to the start of the 1978-79 school year. As such, he had the power pursuant to R. C. 3319.01 to reassign plaintiff to a regular position before she suffered any harm. His failure and refusal to do so must be deemed to constitute an acquiescence, and ratification, of the illegal action of his predecessor. Accordingly, he cannot and should not be permitted to escape liability merely because he did not participate in the original decision.

Even if defendant's argument on this point were deemed meritorious insofar as exculpating defendant Weiss from liability for damages, he would still not be entitled to summary judgment dismissing him as a defendant in this action. Plaintiff's first claim seeks injunctive relief compelling her reassignment to the position of a regular teacher. As the incumbent superintendent vested with the power of assignment, defendant Weiss would be a necessary party for the purpose of enabling the court to grant complete relief should plaintiff ultimately prevail. See *Knotts* v. *City of Gallipolis* (1956), 100 Ohio App. 491, 137 N.E. 2d 592, at 594; 43 C.J.S., 826, *Injunctions,* Section 30.

For the reasons and authorities aforestated, defendants' motion for summary judgment should be, and hereby is, overruled.

*Motion overruled.*