CARROLL, A MINOR, ET AL., *v.* LUCAS, SUPT., PRINCETON CITY
SCHOOL DIST., ET AL.

(No. A-732102—Decided February 13, 1974.)

Court of Common Pleas of Hamilton County.

*Mr. William Flax*, for plaintiffs.
*Messrs. Lindhorst & Dreidame, Mr. Richard J. Schimpf,
Messrs. Rendigs, Fry, Kiely & Dennis, Mr. Don Burkholder*
and *Mr. Robert M. Galbraith*, for defendants.

BLACK, J. Defendants' motion for summary judgment
was submitted to the court on the pleadings and the memo-
randa of counsel, under Civil Rule 56. No depositions,

6

answers to interrogatories, written admissions, affidavits, transcripts of evidence, or written stipulations of fact were filed. Plaintiffs filed a request for admission of genuineness, attaching two letters thereto, and the defendants did not file any written response thereto, either before or after the 28 days designated as the period within which to reply.

The court has considered the motion for summary judgment on the basis of the pleadings only; that is, the complaint and the answer. There being no reply to plaintiffs' request for admission of genuineness, the court deems that there are no "written admissions," as permitted by Civil Rule 56 (C). Further, since the defendants did not support their motion for summary judgment with affidavits, the plaintiffs may rest upon the allegations of their complaint, and it is not necessary for plaintiffs to file affidavits under Civil Rule 56 (E). See *Mason* v. *Roberts* (Ashland Co., 1971), 35 Ohio App. 2d 29.

Plaintiffs are Joyce Elizabeth Carroll, a 14 year old student at the Princeton Junior High School, and her father, who sues individually and as father and next friend of his minor daughter and as "a member of the plaintiff Princeton Parent Action Council," an organization of parents of school children with civic purposes. The defendants are the Superintendent of the Princeton City School District, the Principal of the Princeton Junior High School, the school librarian and one of the school's music teachers. Plaintiffs allege that Miss Carroll was assigned a book entitled "Trips: Rock Life in the Sixties" by Ellen Sander, to be read as part of the course material in her 8th grade music class; thereafter, plaintiffs allege as follows:

"3. The said book is full of various slang and vulgar references to parts of the body, biological functions and sexual acts, as well as crass irreverences, and generally pictures promiscuous group sex practices as acceptable and sometimes desirable or appealing expressions of a type of teenage society, while dealing generally with the social atmosphere, rather than any technical or 'artistic' aspect of the form of music referred to.

"4. The plaintiff, Joyce Elizabeth Carroll, as a result

of this assignment, was prematurely exposed to a side of modern life which her parents had sought to protect her from, in a manner tending to make same seem acceptable, and was thus caused serious emotional conflict, to her damage and to the damage of her relationship with her parents, in that the book confused her and put her in the middle of the antithesis between the values her parents had taught her, and the school's apparent values, interfering with the worth of her companionship and services to her parents.

"5. The said book was obtained from a local bookstore, to be used as school material, without being read or screened by the defendants, as a result of the negligence of the defendants."

Alleging that the book is "harmful to minors" within the meaning set forth in Section 2903.14 (sic) of the Ohio Revised Code, and that there is a possibility of a recurrence of the distribution of such material to junior high school students and the possibility of irremedial harm to those of tender ages, Plaintiffs pray for three types of relief: (I) judgment of $4,000 for Miss Carroll, and judgment of $2,500 for her father; (II) declaratory judgment that "any material furnished to a junior high school student portraying group sexual practices . . . or portraying sexual promiscuity . . ., when furnished to such students as part of the course material in a course in junior high school, or alternatively, when furnished in such a course not primarily concerned with biological subject matter, constitutes 'offensive material . . . harmful to minors;' " and (III) permanent injunction requiring defendants "to obtain knowledge of the condition and character of all materials used in the Princeton Junior High School before they knowingly lend, give or furnish same to any of their students."

Defendants have filed an answer in which they admit only the official status of the defendants within the school district, denying all other allegations of the complaint. Under this circumstance, the court might well conclude that there are issues of fact to be determined, and the case must go to trial. However, the motion being submitted for sum-

mary judgment by agreement of all parties, the court will proceed with the motion as though it were to dismiss the complaint for failure to state a cause of action. See Civil Rule 15 (B).

The court finds that the motion is well taken and the court will grant judgment for the defendants, dismissing the complaint, for the reasons which follow.

I.

With respect to the tort claim for injuries arising from the negligence of the defendants, plaintiffs cannot recover against school district officials any more than they could recover against the school district itself. In the most recent case having to do with suits against Ohio governmental units, *Krause, Admr.,* v. *State* (1972), 31 Ohio St. 2d 132, the Supreme Court reaffirmed the law with respect to tort suits in our courts without the consent of the General Assembly. The law is that while Section 16 of Article I of the Ohio Constitution, as amended September 3, 1912, abolished the defense of governmental immunity, the provisions thereof to the effect that suits "may be brought against the state in such courts and in such manner, as may be provided by law" is not self-executing; specific statutory consent is a prerequisite to such suit. It is not deemed necessary to cite additional authority with respect to this principle.

Although in footnote 11 of the *Krause* case, the court stated that it intimated no opinion on the amenability to suit of other governmental units than the state, the Ohio law is clear that schools and school district officials are not liable for negligence in the absence of any statutory provision imposing such liability. While they may be liable for malicious or deliberate injury to students, they are not liable for torts committed in the performance and within the scope of those duties involving the exercise of judgment and discretion. *Hall* v. *Bd. of Edn.* (Franklin Co., 1972), 32 Ohio App. 2d 297.

The complaint alleges injury from negligence, not from intentional, deliberate, willful or malicious acts of the defendants.

Although the foregoing principle of Ohio law makes

final disposition of the claim for damages from negligence, there is another principle which also blocks tort recovery: In the absence of any contemporaneous physical injury, or any wrongful act of a defendant which is intentional, willful and malicious, there can be no recovery for emotional disturbance such as "serious emotional conflict" or being put "in the middle of the antithesis between the value her parents had taught her, and the school's apparent values." *Miller* v. *Baltimore & Ohio Southwestern Rd. Co.* (1908), 78 Ohio St. 309. *Bartow* v. *Smith* (1948), 149 Ohio St. 301.

If the daughter cannot recover against the defendants on the principal tort, the father cannot recover for loss of companionship and services.

## II.

As to rendering a declaratory judgment under the circumstances set forth in the complaint, the court in the exercise of its judicial discretion determines that it is neither advisable nor proper for the court to render a declaratory judgment as prayed for in the complaint. This determination is made upon the basis of the allegations and the prayer of this specific complaint. For one thing, a judgment declaring the book specifically named in the complaint, or any other material, "offensive material . . . harmful to minors" under R. C. 2903.14, would now be moot. That section and the others relied upon by plaintiffs were repealed effective January 1, 1974, the various definitions of terms now being found in R. C. 2907.01 of the new Ohio Criminal Code. For another, any judgment declaring what is harmful to juveniles or obscene would be a general statement in the nature of legislation, a field forbidden to the courts; any declaratory judgment would constitute a continuing interference with the administration of the school district; any declaratory judgment would be advisory in nature and not addressed to a specific controversy. *Bilyeu* v. *Motorists Mutual Ins. Co.* (1973), 36 Ohio St. 2d 35. Furthermore, due process would require that each piece of material (book or otherwise), which might be distributed to students in the future and which plaintiffs might believe to be in violation of the declaratory judgment, would have to be in-

dividually and specifically reviewed by the court in order to determine whether or not there had been a violation.

The statutes give the courts the discretion to refuse to render declaratory judgment when such would not terminate the uncertainty or the controversy. R. C. 2721.07. It is not necessary to cite extensive authorities in support of this principle.

### III.

As to the prayer for a permanent injunction requiring the defendants to know what they are furnishing to their students, this court will not entertain a prayer so vaguely and generally worded.

The appeal to the equity powers of the court is an appeal to the "conscience of the Chancellor," and one of the uses of equity power is to require the parties to "do good." But courts must use a sensible discretion in exercising this extraordinary power, particularly over other governmental organizations. The courts should not make themselves the general censors of the community, nor interfere with the daily operations of the schools, nor substitute their judgment on a day-by-day, item-for-item basis, for that of the public officials, both elected and appointed, who are made responsible and accountable by law to their own constituencies. Further, there are many other ways in which plaintiffs' complaints may be heard and remedied. This court will not issue an injunction requiring school officials to know what they are furnishing to their students, in the absence of clear and convincing evidence that there has been, is and will be a continuing course of willful conduct causing continuous and irreparable harm, and no other adequate remedy.

Defendants will draw an entry dismissing the complaint.

*Complaint dismissed.*