VANDRIEST ET AL., APPELLANTS, v. MIDLEM, SUPT., APPELLEE.

[Cite as Vandriest v. Midlem (1983), 6 Ohio St. 3d 183.]

(No. 82-507—Decided August 10, 1983.)

*Sindell, Lowe & Guidubaldi Co., L.P.A., Mr. Steven A. Sindell* and *Ms. Claudia R. Eklund,* for appellants.

*Baran & Baran Co., L.P.A.,* and *Mr. Gregory G. Baran,* for appellee.

*Per Curiam.* The controlling question in this appeal is whether appellee is entitled to the immunity from suit provided by the workers' compensation

statutes.[1] If Crestview, appellee's employer, was also appellant's employer, then appellant's action is barred by R.C. 4123.74 and 4123.741. If the school district was not appellant's employer, however, then appellee may not invoke the statutory immunity.

This court considered a related issue in *Daniels* v. *MacGregor Co.* (1965), 2 Ohio St. 2d 89 [31 O.O.2d 141], and *Campbell* v. *Central Terminal Warehouse* (1978), 56 Ohio St. 2d 173 [10 O.O.3d 342]. *Daniels* and *Campbell* involved claims brought by employees of temporary labor agencies against the customers of these agencies. This court held in both cases that the claimants were employees of the agencies' customers even though the customers, at whose places of business the claimants suffered their injuries, made no direct payments to or paid workers' compensation premiums for the claimants. In *Campbell,* at page 176, we found that "there existed an implied contract of hire between * * * [the agency's customer] and appellant [the claimant], whereby appellant in effect authorized * * * [the agency] to offer his services for hire, and * * * [the customer], by approving the referral, accepted appellant's offer." The implied contract rationale of *Campbell* applies with equal force to the case at bar. Appellant authorized NYC to offer his services for hire, and Crestview, by approving the referral, accepted appellant's offer.

The court of appeals correctly characterized the nature of appellant's job as follows: "The employment relationship here was one status. It depended for its very existence upon an accommodation by an agency (the school district) willing to provide work opportunities, *and* a government agency willing to provide the funds for such employment, including premiums for Workers' Compensation. The single employment requires both." (Emphasis *sic.*) This determination is fully consistent with *Campbell.*

Appellant contends that he had no employer-employee relationship with Crestview because his wages were paid by NYC.[2] Under *Daniels* and *Campbell,* however, payment alone is not the critical inquiry. Rather, our previous cases have looked not to the source of compensation but to " 'the right to control the manner or means of performing the work * * *.' " *Daniels,* at page 94, quoting *Behner* v. *Indus. Comm.* (1951), 154 Ohio St. 433 [43 O.O. 360], paragraph one of the syllabus. See, also, *Campbell,* at page 175.

Appellant argues that NYC actually controlled him on the job, first, because appellant could only engage in a limited range of activities pursuant to federal and state regulations and, secondly, because NYC was required to

---

[1] The workers' compensation question is dispositive of this appeal and therefore we do not reach the sovereign immunity issue presented in appellant's first proposition of law.

[2] Appellant cites *Coviello* v. *Indus. Comm.* (1935), 129 Ohio St. 589 [3 O.O. 9], for the proposition that a contract for hire requires payment by the employer to the employee. *Daniels* and *Campbell* necessarily modified *Coviello* because in neither of the temporary employee cases did the employer make direct payments to the employees. Moreover, *Coviello* is factually distinguishable, arising in the context of a claim made by an independent contractor.

make regular inspections of the job site to ensure that program participants complied with all applicable rules.[3] The actual work performed by appellant, however, was assigned and directed by school district employees, including appellee. Even if NYC maintained ultimate control by retaining the power to remove CETA workers from a job site, Crestview exercised immediate control of appellant while he was at work.[4]

While there are no reported Ohio cases dealing with this precise issue, a recent Pennsylvania case, *Keller* v. *Old Lycoming Township* (1981), 286 Pa. Super. 339, 428 A. 2d 1358, considered this question. In *Keller,* the executrix of a deceased CETA worker, who had been killed while working on a township project, brought wrongful death and survivor actions against the township. The court held that the township enjoyed workers' compensation immunity notwithstanding the fact that another agency had paid the decedent's wages and workers' compensation premiums. In *Keller,* the township's role was analogous to the school district in the case at bar and an entity named Service, Training, and Education Programs ("STEP") functioned as did NYC herein. The court addressed the control question as follows at pages 350-351:

"Here, it was the township, and not the federal government or any agency managing CETA programs, such as STEP, that directed the installation of the sewer line and controlled the operations at the worksite where Harold Keller was injured. The township could most directly affect the risks of accidents at the worksite. While STEP also assumed an interest in the safety and other work conditions of CETA workers, it had neither the power nor the responsibility to direct the installation of the sewer line. It could not, for instance, tell Keller's co-workers what ditches to dig, or how to dig them. What it could do was to impose limited sanctions on employers for not complying with its requests. Thus, if an employer did not comply with its directives, it could terminate the worksite as a place where CETA workers could work."

In the instant case NYC, like STEP in *Keller,* "could terminate the worksite as a place where CETA workers could work," and "impose limited sanctions," but NYC did not direct appellant in his day to day activities at work or control the operations at the worksite.

---

[3] Appellee notes that these contentions are "inconsistent with the allegations of 'personal control' in their argument under their first proposition of law [regarding the inapplicability of sovereign immunity]." At one point appellant argues that appellee "assumed personal responsibility for Ted Vandriest's individual safety and personally direct his activities * * *." At another point, however, appellant asserts that "there is no evidence * * * to show that Crestview exercised any control over Ted Vandriest's work activities." The tension between these positions is manifest.

[4] Darryl Eyster, Project Director of the city of Mansfield, who oversaw the general operations of NYC, stated in his deposition, however, that "we [NYC] can't force the job site *per se* to keep a person working that they would choose to not have working."

The *Keller* court, moreover, made the following observation relating to the goals of the CETA program:

"* * * our decision is consistent with accomplishing the purposes of CETA, namely, to 'provide job training and employment opportunities for the economically disadvantaged, unemployed, and underemployed persons.' 29 U.S.C. § 801. The obvious reason the federal government undertook to pay the wages and other costs — including the cost of workmen's compensation insurance — was to make it inexpensive for potential employers, such as Old Lycoming Township, to hire a CETA worker. We agree with the lower court that subjecting such employers to actions at common law would inhibit the CETA workers' employment opportunities."

CETA was designed to do more than provide disadvantaged persons with disposable income. A direct subsidy or welfare payment could serve that function. Congress, however, intended that participation in the CETA program would offer eligible employees a meaningful work experience, thereby inculcating sound work habits and a work ethic. If this court adopted appellant's theory of liability, we would effectively subvert the governmental goals underlying CETA insofar as the imposition of civil liability would discourage potential employing agencies, be they school districts as in the case at bar or townships as in *Keller,* from participating in federal employment programs.

For the reasons hereinbefore stated we affirm the judgment of the court of appeals.

*Judgment affirmed.*

W. Brown, Sweeney, Locher and Holmes, JJ., concur.

Locher and Holmes, JJ., concur separately.

Celebrezze, C.J., C. Brown and J. P. Celebrezze, JJ., dissent.

Holmes, J., concurring. This case raises two issues, each of which may serve as an independent grounds for decision. First, the court is faced with the question of whether a superintendent of schools has sovereign immunity from suit based upon an assertion that his direct negligence caused injuries. Second, there is a question whether the superintendent in this case is immune from suit under R.C. 4123.74.

Turning to the second issue first, R.C. 4123.74 provides that an employer who complies with the provisions of the Workers' Compensation Act is not liable for damages as a result of occupational disease or injury. See, also, R.C. 4123.741 (fellow employees' immunity). In *Daniels* v. *MacGregor Co.* (1965), 2 Ohio St. 2d 89 [31 O.O.2d 141], this court held:

"Where an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate

to work for a customer of the employer and where it is understood that the customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act; and, where such customer has complied with the provisions of the Workmen's Compensation Act, he will not be liable to respond in damages for any injury received by such employee in the course of or arising out of that work for such customer. * * *''

This decision was reaffirmed by the court in *Campbell* v. *Central Terminal Warehouse* (1978), 56 Ohio St. 2d 173 [10 O.O.3d 342]. Thus, this court has adopted a right to control test to determine whether a "loaned servant" is an employee of the party to whom he was loaned. Here, there is no question that the appellee did have the right to control the appellant. Indeed, the whole thrust of appellant's suit is that appellee was negligent in his control of appellant. Therefore, I am in agreement with the majority that based upon this court's holdings in *Campbell* v. *Central Terminal Warehouse* and *Daniels* v. *MacGregor Co., supra,* the judgment of the court of appeals that the appellee was immune from suit under workers' compensation law should be affirmed.

Second, the discretionary or administrative acts of a superintendent of a local school district should not be distinguished from the acts of other public officers, administrators, or officials, and they, in carrying out their official acts, should be held immune from liability for alleged negligent acts, in the absence of a showing of malicious or willful conduct.

R.C. 3319.01 provides, in pertinent part, that, "The superintendent of a * * * school district shall be the executive officer for the board. * * *'' The sovereign function that Midlem performed was indeed an official one of making executive and administrative discretionary determinations for the school district.

In the case of *Baird* v. *Hosmer* (1975), 48 Ohio App. 2d 51 [2 O.O.3d 37], affirmed in 46 Ohio St. 2d 273 [75 O.O.2d 323], the court of appeals set forth the differing status as to the liability of a superintendent to that of a teacher who directly may have negligently acted toward a student, as follows at page 53:

"With the exception of the *Hall* case and *Carroll* v. *Lucas* (1974), 39 Ohio Misc. 5 [67 O.O.2d 104], a Hamilton County Common Pleas Court decision following *Hall,* extensive research has failed to disclose any other decision in any jurisdiction extending the doctrine of sovereign immunity to teachers. On the other hand it has been consistently held in all cases dealing with the subject that governmental immunity from suit for negligence extends to the officers of boards of education and school districts but not to their employees * * *'' .

Also in this regard, the holding in *Hall* v. *Bd. of Edn.* (1972), 32 Ohio App. 2d 297 [61 O.O.2d 396], at 302, may be noted as follows:

"There is also the general rule that school and school district officers are

not liable for torts committed by them in the performance of their duties involving the exercise of judgment and discretion, nor are they liable for the negligence of their employees in the absence of any statutory provision imposing such a liability. School officials, teachers and employees are liable for malicious or deliberate harm or injury to other persons. 48 Ohio Jurisprudence 2d 163, Schools, Section 249.''

The doctrine of sovereign immunity should be continued as it would relate to superintendents of school systems in Ohio who, in the performance of their official functions, are exercising administrative acts of a discretionary nature which should not be held to the tests for liability sounding in negligence.

Accordingly, I concur that the judgment of the court of appeals should be affirmed.

LOCHER, J., concurs in the foregoing concurring opinion.

CLIFFORD F. BROWN, J., dissenting. The keen perception of the equal rights of the working man exhibited by Justice James Celebrezze in his dissent has led him to a just result with which I fully concur. That intuitive grasp of justice made it easy to analyze and assemble the facts in this case and with unassailable logic to reach the correct conclusion, namely, that the city of Mansfield, and not Crestview (nor defendant Midlem), is Vandriest's employer. Therefore, the defendant is not immune from suit under the Workers' Compensation Act.

*Campbell* v. *Central Terminal Warehouse* (1978), 56 Ohio St. 2d 173 [10 O.O.3d 342], and *Daniels* v. *MacGregor Co.* (1965), 2 Ohio St. 2d 89 [31 O.O.2d 141], upon which this court today relies to buttress its rush to an unjust result, are so factually different from the *Vandriest* case as to be not controlling.

The factor distinguishing *Campbell* is that, there, defendant Central was the employer of plaintiff, and plaintiff "clearly was in the service of Central." *Id.* at 175. By contrast, here, no employer-employee relationship existed between plaintiff and Crestview, nor did any exist between plaintiff and Superintendent Midlem. Plaintiff was working for the city of Mansfield, not for Crestview or for defendant Midlem.

In *Campbell*, "[m]oreover, there existed an implied contract of hire between Central and appellant * * *." *Id.* at 176. In the case at bar, no contract, express or implied, existed between Vandriest and defendant.

In *Campbell*, *"* * * Central did pay Hour Man a certain sum which covered the reimbursement of appellant for his services." Id.* Neither Crestview nor defendant Midlem *paid* plaintiff Vandriest, directly or indirectly, *anything* for his services. Through the city of Mansfield Neighborhood Youth Corps, plaintiff was a mere unpaid volunteer of his services to Crestview and defendant Midlem. An unpaid volunteer of services cannot be part of any contract of hire. For workers' compensation immunity

for an employer to arise under R.C. 4123.74,[5] or for an employee, defendant Midlem, under R.C. 4123.741,[6] there must be a "contract of hire" within the meaning of R.C. 4123.01 (A)(2).[7] Such contract of hire did not exist here. *Drexler* v. *Labay* (1951), 155 Ohio St. 244 [44 O.O. 254]; *Coviello* v. *Indus. Comm.* (1935), 129 Ohio St. 589 [3 O.O. 9].

For the same reasons, *Daniels,* being factually similar to *Campbell, supra,* is not applicable.

Since the decision in this case involves a statutory construction and application of R.C. 4123.74, 4123.741 and 4123.01 (A)(2), construction of such statutes by this court in a manner to create immunity for the defendant is a defiant disregard of the legislative mandate of R.C. 4123.95 that "Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees." Instead, this court makes a strict construction of the statutes at issue.

CELEBREZZE, C.J., concurs in the foregoing dissenting opinion.

J. P. CELEBREZZE, J., dissenting.  Under the Workers' Compensation Act, an employee-employer relationship between Ted and Crestview cannot exist, unless there is an express or implied contract of hire. As this court held in *Coviello* v. *Indus. Comm.* (1935), 129 Ohio St. 589 [3 O.O. 9], paragraph five of the syllabus, "[i]t is impossible to have a 'contract for hire' without an obligation that the person denominated the employer pay the person employed." Hence, for the reasons set out below, I respectfully dissent, because it is my opinion that there was no express or implied contract of hire between Ted and Crestview.

Ted was working in a summer youth employment program sponsored by the federal government and administered by the city of Mansfield through its Neighborhood Youth Corps (NYC). The city of Mansfield carried Ted's name

---

[5] Relevant portions of R.C. 4123.74 provide:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, * * * received or contracted by any employee in the course of or arising out of his employment * * *."

[6] Relevant portions of R.C. 4123.741 provide:

"No employee of any employer, as defined in division (B) of section 4123.02 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury * * * received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment * * *."

[7] R.C. 4123.01 provides in pertinent part:

"As used in Chapter 4123 of the Revised Code:

"(A) 'Employee,' 'workman,' or 'operative' means:

"* * *

"(2) Every person in the service of any person, firm, or private corporation, including any public service corporation, * * * under any contract of hire, express or implied, oral or written * * *."

on its payroll and made contributions to the Workers' Compensation Fund on Ted's behalf. The contributions to the fund were made on the city of Mansfield's account, and the workers' compensation claim eventually filed and approved for Ted named the city of Mansfield as the employer. NYC contacted Crestview about providing work experience for Ted. In exchange for Crestview's work experience, NYC provided Crestview with Ted's labor, free of charge.

The point to be stressed is that Crestview did not pay Ted any part of his wages. Moreover, Crestview did not directly or indirectly make any contribution to the Workers' Compensation Fund on Ted's behalf. Furthermore, Crestview did not assert any of the rights an employer normally has under the Workers' Compensation Act (the right to notice of a hearing on a claim and the right to challenge or appeal a decision), nor did it incur any of the detriments associated with the payments of claims (risk payment of higher premiums) in this case, because it could not do so. See *Campbell* v. *Central Terminal Warehouse* (1978), 56 Ohio St. 2d 173, 178-179 [10 O.O.3d 342] (dissenting opinion). Hence, the only logical conclusion one can reach is that the city of Mansfield, and not Crestview, is Ted's employer. Consequently, since Crestview is not Ted's employer, Midlem is not entitled to the co-employee immunity afforded under the Workers' Compensation Act. I would, therefore, reverse the judgment of the court of appeals.