872 F.2d 1028
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Barbara E. SHETLER, individually and as wife of William G.
Shetler, Sr., an incompetent person, Plaintiff-Appellant,
v.
UNITED STATES of America, DEPARTMENT of the AIR FORCE,
Defendant-Appellee.
 No. 88-3590.
 United States Court of Appeals, Sixth Circuit.
 April 4, 1989.
 
 Before BOYCE F. MARTIN, Jr., and RYAN, Circuit Judges, and GEORGE C. SMITH, District Court Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff appeals the district court's order granting summary judgment to defendant in this action brought under the Federal Tort Claims Act, 28 U.S.C.A. Sec. 2674 (1965). We conclude that summary judgment for defendant was appropriate; we therefore affirm.
 
 I.
 
 2
 Plaintiff's decedent William Shetler was employed by the state of Ohio as a maintenance repair worker at the Camp Perry National Guard Station in Port Clinton, Ohio on April 20, 1982. On that date, decedent had been instructed to remove a parachute from the ceiling of a gymnasium at Camp Perry. While performing this task, he fell some twenty feet from the top of a scaffold and sustained injuries which ultimately resulted in his death.
 
 
 3
 The United States and the state of Ohio had entered into an operation and maintenance agreement pursuant to which the federal government agreed to pay seventy-five percent of the cost of operating and maintaining Camp Perry, while the state of Ohio paid twenty-five percent of these costs. Colonel Philip Williams, the Base Detachment Training Site Commander at Camp Perry, stated in an affidavit that there were five state employee positions at Camp Perry. These positions were part of the operations branch commanded by Lieutenant Colonel Philip Brooks. Lieutenant Colonel Brooks testified that in 1982, one of his responsibilities was to supervise Sergeant Robert Bailey. Sergeant Bailey, in turn, directly "supervised the five state employees assigned to Camp Perry, one of whom was William Shetler, Sr." The sworn statements by Colonel Williams and Sergeant Bailey corroborate that of Lieutenant Colonel Brooks on this point. Colonel Williams, Lieutenant Colonel Brooks and Sergeant Bailey were all federal employees. Colonel Williams summarized the factual underpinnings of the employment relationship between plaintiff's decedent and the United States Government as follows:
 
 
 4
 Specifically as to William Shetler, Sr. his work was assigned by Sergeant Bailey; he was recommended for hiring by Lieutenant Colonel Brooks; he was recommended for promotion by Lieutenant Colonel Brooks; his work was appraised by Lieutenant Colonel Brooks and Sergeant Bailey; tools and equipment necessary to complete the tasks assigned were federally owned and provided at Camp Perry; Sergeant Bailey had the authority to instruct how his work was to be performed; Sergeant Bailey maintained his time records. Although William Shetler was an experienced maintenance worker who could perform some tasks without detailed instructions he was always under the control of federal employees while working at Camp Perry and specifically had to always answer to Sergeant Bailey and Lieutenant Colonel Brooks regarding any employment situation.
 
 
 5
 With respect to the incident which took place on April 20, 1982, Sergeant Bailey testified that he had assigned plaintiff's decedent the task of removing the parachute from the ceiling of the gymnasium. The scaffolding used by plaintiff's decedent on that date was federal property. Any other tools and equipment utilized by plaintiff's decedent for the project, or for any other project, were owned by the federal government.
 
 
 6
 After the accident, plaintiff received full Workers' Compensation Benefits from the state of Ohio. The state of Ohio was also billed an additional $16,656.08 for safety violations. This cost was passed on to the United States under the provisions of the Air National Guard Operation and Maintenance Agreement. Although the state of Ohio, as decedent's employer, had financed decedent's workers' compensation benefits, the United States ultimately bore seventy-five percent of the cost of those benefits. The operation and maintenance agreement provided that "[t]he following expenses incurred by the State may be included as a chargeable cost: ... State Workmen's Compensation Insurance premiums...."
 
 
 7
 After administrative claims on behalf of plaintiff's decedent and plaintiff in her own right were denied by the United States Air Force, this action was filed in the district court on October 20, 1985. Following decedent's death, an amended complaint was filed on November 12, 1987 alleging that decedent's death was "directly and proximately caused by the negligence and misconduct of the Defendant, by and through its agents, employees, servants and others acting on behalf of the Defendant." The United States subsequently filed a motion for summary judgment, and the parties apparently agreed to final disposition of the motion by the magistrate. The magistrate issued a Memorandum and Order on June 1, 1988, granting defendant's motion for summary judgment. The magistrate concluded that "the contractual relationship between the state of Ohio and the United States gives rise to statutory employer's status for the defendant United States, which in turn confers upon it workers' compensation tort immunity." It is from this judgment that plaintiff now appeals.
 
 II.
 The Federal Tort Claims Act provides:
 
 8
 The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.
 
 
 9
 28 U.S.C.A. Sec. 2674 (1965). Thus, the United States is liable only for the negligent or wrongful acts which would subject a similarly situated private individual to liability for the same acts. "Liability must be determined in accordance with the law of the place of the accident...." Fraser v. United States, 412 F.2d 22, 23 (6th Cir.1969). The Ohio Workmen's Compensation Act therefore controls.
 
 
 10
 It is clear under the Ohio Workmen's Compensation Act that "employers who comply with [the Act] ... shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition...." O.R.C. Sec. 4123.74 (Supp.1987). The Act defines "employer" as, inter alia,
 
 
 11
 Every person, firm, and private corporation, including any public service corporation, that (a) has in service one or more workmen or operatives regularly in the same business or in or about the same establishment under any contract for hire, express or implied, oral or written, or (b) is bound by any such contract of hire or by any other written contract, to pay into the insurance fund the premiums provided by [the Act].
 
 
 12
 O.R.C. Sec. 4123.01(B)(2) (Supp.1987).
 
 
 13
 The Ohio Supreme Court has consistently interpreted Sec. 4123.01(B)(2) as providing "that one who exercises day-to-day control over the employee will be considered as the employer for purposes of workers' compensation." Foran v. Fisher Foods, Inc., 17 Ohio St.3d 193, 194 (1985); see also Vandriest v. Midlem, 6 Ohio St.3d 183, 184 (1983); Campbell v. Central Terminal Warehouse, 56 Ohio St.2d 173, 174-75 (1978); Daniels v. McGregor Co., 2 Ohio St.2d 89, 92 (1965). In both Daniels and Campbell, the Ohio Supreme Court addressed situations in which an employee of a temporary employment agency was sent to work for a client of the agency. In each case, the injury occurred while the employee was working for the client. In both cases, workers' compensation premiums were paid by the employment agency, and the client merely paid a fee to the agency. The Daniels court set forth the rule governing such situations, and the Campbell court subsequently quoted and affirmed it:
 
 
 14
 Where an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate to work for a customer of the employer and where it is understood that that customer is to have the right to control the manner of means of performing the work, said employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act; and where such customer has complied with the provisions of the Workmen's Compensation Act, he will not be liable to respond in damages for any injury received by such employee in the course of or arising out of that work for such customer.
 
 
 15
 Daniels, 2 Ohio St.2d at 92 (quoted in Campbell, 56 Ohio St.2d at 174-75).
 
 
 16
 Applying this rule to the case at bar, we find that the United States was an "employer" under the Act, and is therefore immune from tort liability. Plaintiff argues that the foregoing rule is not dispositive in this case because an issue of material fact exists as to whether the United States exercised "control" over decedent. In particular, plaintiff points to the deposition testimony of Colonel Williams, who stated: "I don't think it should be assumed that every time Bill Shetler did something, that there was a federal employer supervising him and directly watching what he was doing." This statement does not create a genuine issue as to whether plaintiff's decedent was subject to the "control" of federal employees. At most, Colonel Williams' statement indicates that decedent sometimes performed tasks without the necessity of direct supervision concerning the specific task. The uncontradicted testimony of Colonel Williams, Lieutenant Colonel Brooks, and Sergeant Bailey indicated that decedent was under the "supervision and control" of Sergeant Bailey, and Sergeant Bailey "gave him work assignments, had the authority to direct how work was to be done, kept his time sheets, did his job appraisals, and participated in his job interview.... He was in a position to control the means and methods by which his work was to be accomplished."
 
 
 17
 Fed.R.Civ.P. 56(c) requires "that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). The statement cited by plaintiff does not create a genuine issue as to whether decedent was subject to the "control" of federal employees. We therefore conclude that the magistrate's holding that the United States should be considered as an "employer" under the Ohio Workmen's Compensation Act was correct.
 
 
 18
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable George C. Smith, United States District Judge for the Southern District of Ohio, sitting by designation