### Immel v. Tempmaster Corp.
### Case No. 89AP814
### Franklin County, (10th)
### Decided February 27, 1990
[Cite as 1 AOA 416]

*Barkan & Neff Co., L.P.A., and Mr. Sanford A. Meizlish, for appellant.*

*Taft, Stettinius & Hollister, Mr. James M. Hall, Jr., and Mr. Robert W. McAdams, Jr., for appellee.*

WHITESIDE, J.
Plaintiff, Don Immel, appeals from a judgment of the Franklin County Court of Common Pleas and raises a single assignment of error as follows:

> "The trial court erred in finding that there were no genuine issues of fact as to whether the plaintiff- appellant was an employee of the defendant-appellee which would preclude granting summary judgment."

Plaintiff is an employee of John W. Galbreath & Company assigned to perform certain services at the American Electric Power building (AEP building), it being unclear as to Galbreath's precise relationship to the building. Apparently, some problems developed with respect to some fans furnished by defendant Tempmaster Corporation for the building. As a result, pursuant to an arrangement with Galbreath, Tempmaster sent a technician, Russell Kerr, to balance the fan and request assistance of Galbreath employees in performing the balancing work. Plaintiff Immel was one of the two mechanics assigned by Galbreath to help Kerr. While he was doing so, plaintiff Immel sustained an injury, which he contends was caused by the negligence of Kerr, Tempmaster's employee, and brought this action to recover damages for such injuries.

Defendant Tempmaster filed a motion for summary judgment contending that plaintiff Immel was its employee under the loaned servant doctrine and, therefore, is precluded from seeking damages for his injuries from Tempmaster as his employer by R.C. 4123.74. The trial court sustained the motion for summary judgment, resulting in this appeal.

The issue before us is not whether plaintiff Immel was an employee of defendant Tempmaster but, instead, whether there exists a genuine issue of fact upon the employer-employee issue when the evidence is construed most strongly in favor of plaintiff, as is required by Civ. R. 56 with respect to a motion for summary judgment.

As to the relationship between Galbreath and Tempmaster, it appears that Tempmaster is in the business of selling heating and air conditioning equipment and furnished some

such equipment for use in the AEP building, including the fans which failed. After some negotiations between Galbreath and Tempmaster, it was agreed that Tempmaster would send an employee, a field service representative, to the AEP building to try to solve the long- standing problem with the fans. There was no express agreement for the loan of Galbreath employees to Tempmaster, but plaintiff Immel and another employee, Kenneth Rollins, were assigned by a Galbreath foreman, Chuck Snyder, to assist Tempmaster's representative, Kerr. There was no agreement with respect to reimbursement for the services of these employees, and Tempmaster at first refused to make any payment. Later, an agreement was reached between Tempmaster and Galbreath whereby Tempmaster reimbursed Galbreath for the time that Galbreath's employees spent assisting Kerr.

The evidence indicates that Kerr directed Immel and the other Galbreath employee with respect to the means and manner of assisting him, Kerr, in performing presumably independent contractor services for Galbreath.

On the one hand, plaintiff Immel worked under the direction and control of Tempmaster's employee, Kerr, as to the manner and means of performing the work in connection with the fans. On the other hand, Immel at the same time worked under the direction and supervision of Galbreath as to his work assignment, his hours of work his compensation, and all other matters relative to his employment with Galbreath.

In support of its contention that Immel was its employee, Tempmaster relies upon *Daniels* v. *MacGregor Co.* (1965), 2 Ohio St. 2d 89; *Campbell* v. *Central Terminal Warehouse* (1978), 56 Ohio St. 2d 173; *VanDriest* v. *Midlem* (1983), 6 Ohio St. 3d 183, and *State, ex rel. Stanadyne, Inc.* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 199. None of these cases support the granting of the motion for summary judgment under the circumstances herein, although they arguably would support a factual finding to that effect.

In *Daniels*, an employer furnished an employee to a customer of the employer with the understanding that the customer would have the right to control the manner and means of performing work performed by such employee for the customer. In short, the employer was an employment agency, Manpower, whose business was the furnishing of employees to its customers to perform services for such customers of the nature desired by the customer, in effect as

stated by the Supreme Court a three-party contractual relationship.

*Campbell* involved an almost identical relationship as in *Daniels*, with the employer being Hour Man, rather than Manpower, but again with the employer providing its customer with the employee to perform work for and at the direction and control of the customer.

*VanDriest* involved a CETA worker under an arrangement somewhat similar to those involved in both *Daniels* and *Campbell*, except that the agency providing the employee was a governmental agency rather than a temporary labor agency.

*Stanadyne* involved a slightly different issue; whether the deceased employee had sufficient contacts with Ohio to entitle his dependent to death benefits. The arrangement of employment was somewhat similar to that involved in *Daniels* and *Campbell* in that the employer by contract provided qualified drivers to his customer, Stanadyne, but the employer, Shippers Interstate, paid the drivers and carried worker's compensation insurance as well as assumed responsibility for labor relations. The customer, Stanadyne, paid the employer, Shippers Interstate, for the driver's services but was at liberty to direct the drivers to various destinations and to select their routes. The Supreme Court in deciding the case stated at 202: "Moreover, Shippers Interstate [the employer] can best be described as an employment agency which supplied qualified drivers to Stanadyne [the Customer]."

Here, there is an important distinction in that the employer, Galbreath, was the customer. In other words, Tempmaster contracted to provide certain services (not employees) to Galbreath. In connection with Tempmaster's providing such services to Galbreath, Galbreath was required to provide assistance to the Tempmaster employee performing the services on behalf of Tempmaster for Galbreath, consisting of employee assistance, namely, the two maintenance workers, plaintiff and his co-worker. In no sense was Galbreath an employment agency providing temporary workers to another for compensation. Rather, construing the evidence at this stage most strongly in favor of plaintiff, even the subsequent payment by Tempmaster to Galbreath was more in the nature of damages than direct payment for the services of employees. In other words, Galbreath was reimbursed for its expense incurred in connection with Tempmaster's correcting the

faulty fans, which Tempmaster had provided. It is not clear that plaintiff was an employee of Tempmaster within the contemplation of R.C. 4123.74, or otherwise. Although not controlling, there is no indication that Tempmaster paid workers' compensation premiums (except by reimbursement to Galbreath) or assumed responsibility under the doctrine of *respondeat superior* for the conduct of plaintiff during the time period involved.

In *Stanadyne, Daniels,* and *Campbell,* the employee clearly provided services only for his employer's customer under the sole direction and control of the customer, which services did not benefit the employer except for the profit derived from furnishing the services of the employee to the customer. In addition, the services were performed at or from the customer's place of business, rather than that of the employer. In this case, however, plaintiff performed his services upon the premises of his employer, Galbreath, which services consisted of performing work necessary for the proper operation of his employer's equipment on his employer's premises. In other words, there was no customer involved, plaintiff's employer, Galbreath, being the customer of defendant Tempmaster, who had provided the fans and was making necessary adjustments so that they would operate properly.

Here, it is not clear that plaintiff worked under the sole direction and control of Tempmaster during the period in question (even if that be sufficient under the circumstances involved) but, instead, the evidence indicates some control was retained by Galbreath over its employees who were assigned to assist Tempmaster in performing the necessary services for Galbreath. Construing the evidence most strongly in favor of plaintiff, it cannot be found that, as a matter of law, plaintiff was an employee of defendant Tempmaster. Issues of fact remain for determination, even assuming that from the evidence it would be possible to find that plaintiff was an employee of defendant Tempmaster in connection with its performance of services for plaintiff's employer, Galbreath. Accordingly, the assignment of error is well-taken. For the foregoing reasons, the assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed and cause remanded.*

McCORMACK, P. J., and McKINLEY, J., Concur.

McKINLEY, J., of the Union County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.