REPUBLIC-FRANKLIN INSURANCE COMPANY, APPELLEE, *v.* CITY OF AMHERST, APPELLANT, ET AL.

[Cite as Republic-Franklin Ins. Co. *v.* Amherst (1990), 50 Ohio St. 3d 212.]

(No. 89-137—Submitted February 6, 1990—Decided April 18, 1990.)

*Means, Bichimer, Burkholder &
Baker Co., L.P.A., Kevin R. Campbell*
and *John E. Britton,* for appellee.

*Thomas H. Sanborn,* director of
law, for appellant.

*Blaszak, Shilling, Coey & Bennett
Co., L.P.A.,* and *Larry E. Coey,* for in-
tervenor, Ronald W. Leoni.

ALICE ROBIE RESNICK, J. The
issue before this court is whether a
person convicted of a misdemeanor
who agrees to do community service
work in lieu of sentence, and is subse-
quently injured performing such work,
is, for purposes of the workers' com-
pensation law, an "employee" of the
agency to whom he is assigned.[1]

A claimant's "[e]ntitlement to
workers' compensation payments is a
substantive right measured by the
statutes in force on the date of the in-
jury. *State, ex rel. Samkas,* v. *Indus.
Comm.* (1982), 70 Ohio St. 2d 279, 281
[24 O.O. 3d 364]; *State, ex rel. Vaughn,*
v. *Indus. Comm.* (1982), 69 Ohio St. 2d
115, 117 [23 O.O. 3d 161]; *State, ex rel.
Jeffrey,* v. *Indus. Comm.* (1955), 164
Ohio St. 366, 367 [58 O.O. 152]; *State,
ex rel. Schmersal,* v. *Indus. Comm.*
(1944), 142 Ohio St. 477, 478 [27 O.O.
404]; *Indus. Comm.* v. *Kamrath* (1928),
118 Ohio St. 1, paragraphs one
through three of the syllabus." *State,
ex rel. Kirk,* v. *Owens-Illinois, Inc.*
(1986), 25 Ohio St. 3d 360, 361, 25 OBR
411, 411-412, 496 N.E. 2d 893, 895.

At the time of Leoni's injury,
sovereign immunity for municipalities
had been significantly curtailed by this
court's decision in *Haverlack* v. *Port-
age Homes, Inc.* (1982), 2 Ohio St. 3d
26, 2 OBR 572, 442 N.E. 2d 749. The
city of Amherst has stated in its brief
that as a result of the decision in
*Haverlack, supra,* it purchased various
forms of insurance, including the in-
surance policy at issue in this case, in
order to protect itself from possible
liability for injuries suffered by per-

---

[1] Since the relevant exclusion in the in-
surance contract herein, set forth *infra,*
reflects R.C. 4123.82(A), which prohibits
contracts indemnifying employers against
loss or liability for the payment of workers'
compensation to workers injured or killed
in the course of their employment, the issue
of what constitutes an "employee" will be
examined in the context of workers' com-
pensation.

sons performing community service work. The city stated that it also paid workers' compensation premiums for community service workers in spite of the fact that it was unsure if such workers were covered under workers' compensation law.[2]

However, payment of workers' compensation premiums for a particular worker does not necessarily mean that the worker is an "employee" for purposes of workers' compensation. In the instant case, despite the city's payment of workers' compensation premiums for persons performing community service in lieu of sentence, the Industrial Commission denied Leoni's application for workers' compensation benefits because it determined that he was not an "employee" of the city of Amherst.

The insurance policy herein was designed, in part, to provide coverage for the city in those situations where there was no workers' compensation coverage. The automobile policy exclusions from coverage for bodily injury and property damage liability state in part:

"Exclusions

"This insurance does not apply:

"* * *

"(b) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

"(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury * * *."

Nevertheless, appellee argues that Leoni is excluded from coverage under the policy because he was an "employee" of the city at the time of his injury. Additionally, appellee contends that workers such as Leoni are excluded from insurance coverage since the city paid workers' compensation premiums for persons performing community service, even though the Industrial Commission concluded that Leoni was not an employee of the city.

The court of appeals concluded

---

[2] On November 20, 1985, approximately four months after Leoni's injury, R.C. Chapter 2744 was enacted, which delineated political subdivision tort liability. R.C. 2744.01(B) defines "employee," as used in that chapter, to include "* * * a person who has been convicted of or pleaded guilty to a criminal offense and who has been sentenced to perform community service work in a political subdivision whether pursuant to section 2951.02 of the Revised Code or otherwise * * *." 141 Ohio Laws, Part I, 1699, 1707. See, also, R.C. 2744.03(A), wherein it states:

"(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

"* * *

"(4) The political subdivision is immune from liability if the action or failure to act by the political subdivision or employee involved that gave rise to the claim of liability, resulted in injury or death to a person who had been convicted of or pleaded guilty to a criminal offense and who, at the time of the injury or death, was serving any portion of his sentence by performing community service work for or in the political subdivision whether pursuant to R.C. 2951.02 of the Revised Code or otherwise * * * and if, at the time of his injury or death, the person * * * was covered for purposes of Chapter 4123 of the Revised Code in connection with the community service or community work for or in the political subdivision." 141 Ohio Laws, Part I, 1699, 1713-1714.

that because the city had "obtained worker's [*sic*] compensation coverage for Leoni, the liability policy was not applicable. * * *" However, the fact that workers' compensation premiums were paid for a person performing community service through an order of a court in lieu of sentence is not determinative of whether that person is an employee of the agency where the community service is performed.

Appellee argues that Leoni was an employee of the city for purposes of workers' compensation because the city had the right to control Leoni's activities. Appellee cites *Vandriest* v. *Midlem* (1983), 6 Ohio St. 3d 183, 184, 6 OBR 239, 240, 452 N.E. 2d 321, 322, wherein this court stated that the existence of an employer-employee relationship turns not only on the source of compensation but also on " ' "the right to control the manner or means of performing the work * * *." ' " See, also, *Daniels* v. *MacGregor Co.* (1965), 2 Ohio St. 2d 89, 31 O.O. 2d 141, 206 N.E. 2d 554. We, however, do not find *Vandriest, supra,* controlling.

Rather, we believe that the proper focus in these circumstances is whether a "contract of hire," either express or implied, exists between the individual and the city. R.C. Chapter 4123 neither expressly allows nor prohibits a community service worker from being granted workers' compensation benefits. R.C. 4123.01(A)(1)(a) (formerly R.C. 4123.01[A][1]) defines who is an "employee" for purposes of workers' compensation. This definition expressly states that a contract of hire must exist in order for a person to be an "employee":

"(A)(1) 'Employee,' 'workman,' or 'operative' means:

"(a) Every person in the service of the state, or of any county, municipal corporation, township, or school district therein, * * * whether paid or volunteer, and wherever serv-ing within the state or on temporary assignment outside thereof, and executive officers of boards of education, under any appointment or *contract of hire, express or implied, oral or written * * *.*" (Emphasis added.)

It has been stated that, in the context of workers' compensation laws, "[t]he compensation concept of 'employee' is narrower than the common-law concept of 'servant' in one important respect: Most acts require that the service be performed under a contract of hire, express or implied. Among the more important consequences of this requirement are the following:

"* * *

"(b) Persons who perform services and receive some kind of payment, but not under the usual contract between persons equally free to bargain and contract, such as prisoners and relief workers, have in the majority of cases been denied compensation[.]" 1C Larson, Law of Workmen's Compensation (1986) 8-284, Section 47.00. See, also, *Commonwealth* v. *Smith* (Ky. 1988), 759 S.W. 2d 56; *Abrams* v. *Madison Cty. Highway Dept.* (Tenn. 1973), 495 S.W. 2d 539; *Watson* v. *Indus. Comm.* (1966), 100 Ariz. 327, 414 P. 2d 144; *Shain* v. *Idaho State Penitentiary* (Idaho 1955), 291 P. 2d 870; *Bowman* v. *State* (Mo. App. 1988), 763 S.W. 2d 161; *Orr* v. *Indus. Comm.* (Colo. App. 1984), 691 P. 2d 1145, affirmed (Colo. 1986), 716 P. 2d 1106; *Schraner* v. *State Dept. of Correction* (Ind. App. 1963), 189 N.E. 2d 119.

It has been argued, however, that as the work performed by prisoners moves from "hard labor" to work more closely resembling that done by other workers, workers' compensation should be granted to prisoners. See 1C Larson, *supra,* Section 47.31(e), and *South Tucson* v. *Indus. Comm.* (1988), 156 Ariz. 543, 549, 753 P. 2d 1199,

1205. Some jurisdictions also have allowed workers' compensation to prisoners where the work is voluntary and is not performed within the prison walls but instead is done for either an agency of the state or for private contractors. See, *e.g.*, *Morales* v. *Workers' Comp. Appeals Bd.* (1986), 186 Cal. App. 3d 283, 230 Cal. Rptr. 575; *Pruitt* v. *Workmen's Comp. Appeals Bd.* (1968), 261 Cal. App. 2d 546, 68 Cal. Rptr. 12; and *Johnson* v. *Indus. Comm.* (1960), 88 Ariz. 354, 356 P. 2d 1021. But, see, *Parsons* v. *Workers' Comp. Appeals Bd.* (1981), 126 Cal. App. 3d 629, 179 Cal. Rptr. 88.[3]

Reviewing the law applicable to the case before us, we find that no contract of hire existed between Leoni and the city. Appellee seems to argue that an employer-employee relationship existed between Leoni and the city because both parties received something of value from this arrangement. The city received the services of workers such as Leoni without charge and Leoni received substantial benefits because he was not incarcerated and could remain at home with his family. However, while appellee may be correct that community service work is preferable to incarceration, such an argument ignores the fact that community service work is imposed by the court in lieu of sentence for conviction of a misdemeanor. A person who consents to perform community service in lieu of sentence enters into an agreement with the court, not the agency where the work is performed. There is no express or implied contract of hire between the community service worker and the agency using his services. Hence, the community service worker cannot be considered an employee of the agency.

Although Leoni agreed to perform community service work in lieu of incarceration, such work was nevertheless not "voluntary in the sense that a private citizen's work is voluntary in that he may or may not, as he chooses, enter into a contract for hire with respect to his labor." *Commonwealth* v. *Smith, supra,* at 58.

Furthermore, R.C. 2951.02(H) belies any voluntariness of community service work. At the time the terms of Leoni's probation were set, that section provided:

"When an offender is convicted of a misdemeanor the court may offer to the offender, as a condition of probation that would be in addition to the required conditions of probation and the discretionary conditions of probation that may be imposed pursuant to division (C) of this section, that the offender *be required* to perform supervised community service work under

---

[3] Additionally, some jurisdictions, under certain conditions and circumstances, specifically allow injured inmates to receive either workers' compensation or similar compensation. "The unique problem of prisoners calls for careful legislative amendment of compensation acts, adapting their coverage to appropriate kinds of prison employment and disability. * * *" 1C Larson, *supra,* at 8-308, Section 47.31(f). See, *e.g.,* Iowa Code Ann. Section 85.62 (1984); Md. Ann. Code Article 101, Section 35(a) (Supp. 1989); Neb. Rev. Stat. Sections 48-115(1)(f) and (j) (1988); N.C. Gen. Stat. Section 97-13(c) (1985); Ore. Rev. Stat. Ann. Section 655.505 *et seq.* (1989); S.C. Code Ann. Sections 42-1-480, 42-1-490, 42-1-500 (1985) and 42-1-505 (Supp. 1989); Wash. Rev. Code Ann. Section 72.60.102 (Supp. 1989); Wis. Stat. Ann. Section 56.21 (1987). But, cf., Ariz. Rev. Stat. Ann. Section 31-254 (Supp. 1989) and Fla. Stat. Ann. Section 946.002 (1985). But, compare, *Courtesy Constr. Corp.* v. *Derscha* (Fla. App. 1983), 431 So. 2d 232 (statutory exclusion of prisoners from workers' compensation eligibility applies only to those prisoners paid from correctional work program fund).

the authority of health districts, park districts, counties, municipal corporations, [etc.] * * *." (Emphasis added.) 140 Ohio Laws, Part I, 583, 606. Although the statute went on to provide that "[s]upervised community service work shall not be required as a condition of probation under this division unless the offender agrees to perform [it] * * *," *id.*, the court still has the authority to impose community service work on a defendant whose freedom of choice is severely limited.

For the foregoing reasons, we find that the trial court was correct in determining that Leoni was not an employee of the city and thus was not excluded under the automobile insurance policy. The judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.