895 P.2d 286

**Sharon T. JOYCE, Worker–Appellant,**

v.

**PECOS BENEDICTINE MONASTERY and Mountain States Mutual Casualty Company, Employer/Insurer–Appellees.**

**No. 15793.**

Court of Appeals of New Mexico.

April 25, 1995.

David L. Skinner, Victoria L. Williams, Pelton & O'Brien, P.A., Albuquerque, for worker-appellant.

Thomas L. Johnson, Christopher A. Riehl, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for employer/insurer-appellees.

### OPINION

PICKARD, Judge.

Claimant appeals from the workers' compensation judge's order dismissing her claim. The sole issue presented on appeal is whether Claimant was a "worker" at the time of her injury for purposes of the New Mexico Workers' Compensation Act, NMSA 1978, Sections 52–1–1 to 52–1–70 (Repl.Pamp.1991 & Cum.Supp.1994). We find no error in the judge's order dismissing with prejudice Claimant's complaint for benefits.

Renouncing her former civil service to the Air Force as an armaments engineer, Claimant joined the Pecos Benedictine Monastery in the summer of 1991 in order to devote her life to the service of God. On January 22, 1993, Claimant sustained an injury to her back when she slipped on a floor being washed by an employee of the monastery. The monastery is a religious institution dedicated to following the Rule of Saint Benedict, and its primary purpose is the spiritual development of its members. The monastery takes in money by offering retreats and religious publications in exchange for donations.

Prior to admittance as a temporary member of the monastery, Claimant completed an

application for admission. In the application, Claimant described her motivations for joining the monastery as: "I am attracted to community life in service of man and God. I feel a need to answer God's call and want [to] explore monastic life as an answer to His call." What attracted her to the Pecos Monastery in particular was "[t]he Abbey's obedience and adherence to our Pope." Upon receipt and review of Claimant's application to the monastery, the monastery invited Claimant to become a member of the monastery, an invitation that the Abbot of the monastery did not consider an offer of employment.

At the time of her injury, Claimant enjoyed the status of a novice in the monastery, which meant that she was considered a temporary member, working her way through a progression of classifications called a "formation process," at the completion of which she would be invited to apply for permanent status with the monastery. The process of becoming a permanent member requires approximately five years. As a novice, Claimant was assigned work in the reservations and business office of the monastery. Claimant's work in the reservations and business office was accomplished in regular working hours and was supervised. The work assigned novices in the monastery is considered by the Abbot of the monastery to be "a spiritual discipline that also has its practical side." No distinctions are drawn between spiritual duties and menial work assigned to members of the monastery. Work assignments are made on the basis of the needs of the monastery and the abilities of the members. Members are not allowed to refuse their work assignments because the Rule of Saint Benedict requires them to work. Claimant testified that an instrumental part of her answering God's call was to perform service for the monastery and that, for her, part of that service was duty in the reservations and business office. Claimant testified that she did not expect to receive monetary remuneration for her services when she came to the monastery, and that her motivations to complete services while at the monastery were her love for God, her desire to advance her relationship with God, and her desire to advance in the community formation process.

Claimant testified that she did not expect monetary reward "in the form of a paycheck" in exchange for her services, but she did expect to receive housing, food, and spiritual benefits. Upon acceptance as a member of the monastery, Claimant signed a "waiver of remuneration," whereby she waived "all claim and rights to any salary or reimbursement whatever for services rendered by me during my association with the PECOS BENEDICTINE MONASTERY, Incorporated, Our Lady of Guadalupe Abbey, Pecos, New Mexico."

Members of the monastery are provided a room and three meals a day. In addition, novices such as Claimant are provided a "vestry" of twenty-five dollars a month. Room, board, and vestry were available to Claimant during two periods of time during which she was not physically able to perform the manual labor that was assigned to her. Claimant testified that the purpose of the vestry was to buy necessary personal items and to cover living expenses over and above the room and board that was provided by the monastery. Claimant testified that she never received tax forms from the monastery and that she never reported her vestry as income to either the federal or state governments because she was told that it was not part of her income. No taxes are withheld from the vestry.

In addition to members, there are people who work at the monastery who are volunteers and what the monastery considers "employees." Volunteers do not receive a vestry. Employees receive a salary, are not considered members, are covered by workers' compensation insurance, and complete an application prior to employment that is different from that completed by members.

Section 52–1–2 provides that "every charitable organization employing workers ... shall become liable to and shall pay to any such worker injured by accident arising out of and in the course of his employment ... compensation in the manner and amount at times herein required." The Act defines "worker" as "any person who has entered into the employment of or works under contract of service or apprenticeship with an

employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business." Section 52–1–16(A). The monastery and its workers' compensation carrier contend that the monastery is not obligated to pay compensation to Claimant because she was not a worker for purposes of the Act. We agree.

■ Where the facts are undisputed as they are here, the question of whether Claimant was a worker at the time of her injury is a question of law. *See Jelso v. World Balloon Corp.*, 97 N.M. 164, 167, 637 P.2d 846, 849 (Ct.App.1981). Claimant argues that she was under a contract of service or apprenticeship. Claimant correctly observes that:

> to establish the relationship of employer-employee in the workmen's compensation context, there must exist a mutuality of obligations and agreement; there must be present both a duty of employee to perform services subject to an employer's right to control the details of performance, and the worker's right to receive compensation.

*Id.* at 168, 637 P.2d at 850.

No New Mexico case has previously considered the issue of whether a member of a religious order is a worker for purposes of the Act. Some other states have, however, and we turn to them for guidance.

In *Sister Odelia v. Church of St. Andrew*, 195 Minn. 357, 263 N.W. 111 (1935), the claimant, Sister Odelia, was a Benedictine nun who worked in a parochial school operated by the Church of Saint Andrew. *Id.* 263 N.W. at 111. Pursuant to a contract, the church paid $350 annually and provided her with room and board. *Id.* Sister Odelia had an agreement with her order whereby she turned over all money earned by her to the order. *Id.* The court held that, regardless of who ended up with her paycheck, wages were being paid for Sister Odelia's services. *Id.* at 112. Therefore, the court ruled, Sister Odelia was an employee of the church.

Similarly, in *Sister Mary Benedict v. St. Mary's Corp.*, 255 Iowa 847, 124 N.W.2d 548 (1963), Sister Mary Benedict was a member of the Congregation of the Sisters of Humili-ty of Mary order. *Id.* 124 N.W.2d at 550. Sister Mary Benedict taught at a parochial school operated by the order and was paid $750 a year and furnished with room and board pursuant to a contract with the school. *Id.* Sister Mary Benedict assigned every paycheck from the school to the order. *Id.* The definition of an employee, for purposes of the Iowa workers' compensation scheme at the time, was substantively identical to the definition of a worker in New Mexico. *Id.* The court cited with authority the reasoning in *Sister Odelia* which observed that, regardless of whether the money paid to claimant was assigned to the order to which the claimant belonged, the claimant was being paid for her work. *Sister Mary Benedict*, 124 N.W.2d at 551. Therefore, the court held, Sister Mary Benedict was an employee for purposes of the Iowa workers' compensation act.

In contrast, in *Blust v. Sisters of Mercy*, 256 Mich. 1, 239 N.W. 401 (1931), the claimant, Blust, was in training to become a teacher in a parochial school operated by the Sisters of Mercy. *Id.* 239 N.W. at 401. Blust received no payment for her services. *Id.* at 404. The majority opinion contrasted a dissenter's characterization of Blust as a worker as follows:

> I find no analogy between instances of work without pay in industrial and professional pursuits, in order to qualify for work with pay, and an instance of entering a charitable and religious order as a novitiate with intent to qualify for membership and a life devoid of pecuniary purpose. In the one instance there is the relation of master and servant and a semblance of hiring, though without wage, but with commercial earmarks, while in the other there is no relation of master and servant, no hiring, and no commercialism, but a devotion to charitable purpose without hope of pecuniary reward.

*Id.* The *Blust* court noted that the Sisters of Mercy did have other persons to whom they actually paid wages and for whom they provided workers' compensation insurance and benefits. *Id.* at 404–05.

Finally, in *McBeth v. Salvation Army*, 314 So.2d 468 (La.Ct.App.), *cert. denied*, 320

So.2d 905 (1975), the claimant was an alcoholic whom the Salvation Army accepted into one of their rehabilitation centers. *Id.* at 469–70. The Salvation Army provided the claimant with food, clothing, a place to sleep, and a small weekly allowance, termed a "gratuity," in order to allow the claimant to buy personal items. *Id.* at 470. As part of the rehabilitation program, the claimant was required to perform various tasks. The court noted that the claimant's purpose in coming to the center was " 'to work and to have a home,' " *id.*, and that the Salvation Army's purpose in the association with the claimant was "solely for the purpose of helping the plaintiff and others in his situation." *Id.* at 472. Particularly relevant to the instant case was the court's ruling that:

> As shown by plaintiff's application for admission and by the depositions in the record, both plaintiff and The Salvation Army were fully aware of the fact that plaintiff was a beneficiary, a person being helped by a charity organization, and not in any reasonable sense an employee.

*Id.* Therefore, the court ruled, the claimant was not performing services for the Salvation Army for purposes of Louisiana's workers' compensation scheme so as to make the Salvation Army liable to Claimant under workers' compensation. *Id.*

In the instant case, the monastery does not contend that it had no right to control the details of Claimant's work. *Cf. Dibble v. Garcia,* 98 N.M. 21, 24, 644 P.2d 535, 538 (Ct.App.) (delineating factors in determining whether employer has right to control), *cert. denied,* 98 N.M. 50, 644 P.2d 1039 (1982). Indeed, the facts indicate in this case that the monastery did control every aspect of Claimant's life and service during her time at the monastery. Rather, the monastery argues that no contract of employment or apprenticeship existed between it and Claimant.

■ While the parties' characterization of the relationship will not be dispositive on the issue of whether a contract of employment existed, *see Rivera v. Sagebrush Sales, Inc.,* 118 N.M. 676, 679, 884 P.2d 832, 835 (Ct.App.), *cert. denied,* 118 N.M. 585, 883 P.2d 1282 (1994), in order for a contract of employment to exist, there must be mutual assent, express or implied. *Segura v. Kaiser Steel Corp.,* 102 N.M. 535, 537, 697 P.2d 954, 956 (Ct.App.1984), *cert. quashed,* 102 N.M. 412, 696 P.2d 1005 (1985). The existence of a contract of hire requires an agreement pursuant to which claimant "was to receive payment in wages or something of value which were understood by the parties to constitute the equivalent of wages." *Jelso,* 97 N.M. at 171, 637 P.2d at 853.

■ Claimant is correct in pointing out that "[t]he element of payment, to satisfy the requirement of a contract of hire, need not be in money, but may be in anything of value. Board, room, and training ... are treated as the equivalent of wages." 1B Arthur Larson, *The Law of Workmen's Compensation* § 47.43(a) at 8–384 to 8–387 (1993) (footnotes omitted). However, based on the record in this case, we cannot say the judge erred in determining that Claimant did not receive her room, board, training, and vestry as payment for her services. The application for membership, Claimant's waiver of remuneration, Claimant's letter to the monastery, and the testimony at trial all support the conclusion that Claimant was not under a contract of either service or apprenticeship. Claimant indicated that her motivation in joining the monastery and performing service while there was to know and serve God and answer His call. The primary purpose of the monastery is to further the spiritual development of its members. Members such as Claimant are assigned service tasks in order to facilitate their spiritual development. In contrast to *Sister Mary Benedict* and *Sister Odelia,* Claimant in this case was not receiving a wage in exchange for her services. Rather, Claimant rendered her services out of religious devotion and the room, board, training, and vestry were rendered to her to facilitate her spiritual development. All of the above factors support the judge's conclusion that the relationship between Claimant and the monastery was one of religious devotion rath-

er than a contract for service or apprenticeship. *See Jelso*, 97 N.M. at 169, 637 P.2d at 851. *See also McBeth*, 314 So.2d at 472.

The judgment is therefore affirmed.

IT IS SO ORDERED.

BLACK and BUSTAMANTE, JJ., concur.