907 P.2d 1018

Jose Ventura **BENAVIDEZ,**
**Claimant–Appellant,**

v.

**SIERRA BLANCA MOTORS and Department of Corrections, State of New Mexico, Defendants–Appellees.**

**No. 16022.**

Court of Appeals of New Mexico.

Nov. 8, 1995.

Vernon O.M. Henning, Warren F. Reynolds, P.A., Hobbs, for Claimant–Appellant.

David L. Skinner and Victoria L. Williams, Pelton & O'Brien, P.A., Albuquerque, for Defendant–Appellee Sierra Blanca Motors.

Norman D. Ewart, Hinkle, Cox, Eaton, Coffield & Hensley, P.L.L.C., Roswell, for Defendant–Appellee Department of Corrections.

## OPINION

APODACA, Chief Judge.

1. Jose Ventura Benavidez (Claimant) appeals an order of the workers' compensation judge (the judge) granting summary judgment to Sierra Blanca Motors (Sierra Blanca) and the Department of Corrections (the Department) and denying his cross-motion for summary judgment against Sierra Blanca. Claimant, who was a prisoner at the time of his injury, raises one issue on appeal: whether a prisoner who voluntarily participates in a work-release program and is injured while under the direction of a private business is an employee of such business and thus entitled to workers' compensation benefits under the Workers' Compensation Act, NMSA1978, §§ 52–1–1 to 52–1–70 (Repl. Pamp.1991 & Cum.Supp.1995) (the Act). We hold that, as a matter of law, under the facts of this appeal, Claimant was an employee of Sierra Blanca under the Act and therefore entitled to workers' compensation benefits. We thus reverse the order granting summary judgment to Sierra Blanca and denying Claimant's cross-motion for summary judgment. Because Claimant has conceded on appeal that he is not an employee of the Department, the order granting summary judgment to the Department is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. Sierra Blanca is a company that sells and services automobiles. Sometime before the injury to Claimant, Sierra Blanca contacted the Roswell Correctional Center (the RCC), a component of the New Mexico Penitentiary system operated by the Department, to request the services of several inmates. Sierra Blanca intended to use the prisoners to help demolish one of its buildings and prepare it for remodeling. Sierra Blanca had performed reconstruction on its premises in the past. Claimant, an inmate at the RCC, voluntarily participated in the work for Sierra Blanca through the Department's work-release program.

3. At the job site, Sierra Blanca told the prisoners what needed to be done, answered questions, and checked up on their work. Sierra Blanca provided equipment to the prisoners. It also kept daily payroll records for each prisoner and paid wages at the rate of $4.35 per hour. Sierra Blanca did not deduct any payroll taxes or take any other deductions from those earnings. These wages were then mailed to the RCC, which deposited the checks into each inmate's account, after deducting certain expenses not relevant here.

4. After Claimant had worked at the job site for over a month, Sierra Blanca, through a supervisor, directed Claimant to dismantle an overhead door. While working on the door, Claimant fell from a ladder and was injured. In his original claim for workers' compensation benefits, Claimant alleged that both Sierra Blanca and the Department were his employers under the Act. However, Claimant filed his cross-motion for summary judgment solely against Sierra Blanca.

5. The judge determined the following facts as undisputed: (1) Claimant was injured when he fell from a ladder while working on a remodeling project; (2) Sierra Blanca directed the work being performed by Claimant; (3) Claimant was a prisoner at the RCC on the date of the accident; (4) Claimant was participating in a work-release program administered by the RCC on the date of the accident; (5) Claimant's status on the date of the accident, while engaged in the RCC work-release program, was that of a volunteer.

6. Based on these undisputed facts, the judge concluded that Claimant did not qualify as a "worker" under the Act and thus granted summary judgment to Sierra Blanca and the Department.

## II. DISCUSSION

### A. Summary Judgment As To The Department

■ 7. Although Claimant appealed from the order granting summary judgment to the

Department, he has not provided any argument or legal authorities in opposition to the judgment in favor of the Department in any pleading filed with this Court. We therefore affirm the order granting summary judgment to the Department. *See Doe v. City of Albuquerque,* 96 N.M. 433, 436, 631 P.2d 728, 731 (Ct.App.1981) ("Points of error not properly briefed or argued will not be considered.").

**B. Summary Judgment As To Sierra Blanca**

8. Three sections of the Act are particularly relevant to our disposition. We quote from two of them here and discuss the third later in the opinion. Section 52–1–2 of the Act, entitled "Employers who come within act," states that "every private person, firm or corporation engaged in carrying on for the purpose of business or trade within this state ... shall become liable to and shall pay *to any such worker* injured by accident arising out of and in the course of his employment ... compensation...." (Emphasis added); *see also* § 52–1–15 ("employer" defined).

■ 9. In Section 52–1–16(A), "worker" is defined as "any person who has entered into the employment of or works under contract of service or apprenticeship with an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business." Where the facts are undisputed, as they are here, the question of whether Claimant was a "worker" (as defined in the Act) at the time of his injury is a question of law. *See Jelso v. World Balloon Corp.,* 97 N.M. 164, 167, 637 P.2d 846, 849 (Ct.App.1981). Our first step then, in addressing the issue raised in this appeal, is to determine whether Claimant "entered into the employment of or works under contract of service or apprenticeship" with Sierra Blanca, pursuant to Section 52–1–16.

**1. Implied Contract Of Service**

■ 10. An employment contract requires an agreement under which the worker receives payment in wages or something of value in exchange for his labor. *Jelso,* 97 N.M. at 171, 637 P.2d at 853. This contract of service exists only if the agreement stems from mutual assent, express or implied. *Id.* Other jurisdictions that have analyzed agreements between inmates working outside the prison and employers suggest that one crucial aspect of the contract is the extent to which the agreement is voluntary. *See, e.g., Downey v. Bituminous Casualty Corp.,* 349 So.2d 1153, 1154 (Ala.1977); *Johnson v. Industrial Comm'n,* 88 Ariz. 354, 356 P.2d 1021, 1023 (1960); *Barnard v. State,* 642 A.2d 808, 816 (Del.Super.Ct.1992), *aff'd,* 637 A.2d 829 (Del.1994).

■ 11. Sierra Blanca first argues that NMSA1978, Section 33–8–4 (Repl.Pamp. 1990) precludes any prisoner from performing voluntary labor. The section states: "All persons convicted of [a] crime and confined in a facility under the laws of the state ... *shall perform labor* under such rules and regulations as have been or may ... be prescribed by the department." *Id.* (emphasis added). Any work that a prisoner performs, Sierra Blanca argues, is compelled by the statute.

12. We disagree for two reasons. First, another statute, NMSA1978, Section 33–2–43 (Repl.Pamp.1990) allows the warden to institute a work-release program only if the participating prisoners are volunteers. Although Claimant may have been compelled generally to labor under Section 33–8–4, he was not compelled specifically to perform labor in the work-release program for Sierra Blanca. He chose to do so. Second, the judge listed as an undisputed fact that Claimant's status at the time of the accident "was that of a volunteer." Because Sierra Blanca time sheets indicate it paid each prisoner an hourly wage, we do not interpret the undisputed fact to mean that Claimant gave his services voluntarily, without any expectation of reimbursement. *Cf. Jelso,* 97 N.M. at 169, 637 P.2d at 851 (injured claimant occupied status of volunteer because she had no legitimate expectation of payment for services). We instead interpret "volunteer," as used by the judge, to mean that Claimant had a choice to participate. We thus determine that Claimant had the capacity to make a voluntary agreement.

13. Sierra Blanca also argues that prior New Mexico case law teaches that, if a person's status is that of a prisoner, an employer-employee relationship resulting from a contract of hire can never be created. *Scott v. City of Hobbs,* 69 N.M. 330, 331, 366 P.2d 854, 855 (1961). We again disagree.

14. In *Scott,* the prisoner elected to work for the city pursuant to a city ordinance and an order from a municipal judge. *Id.* at 330, 366 P.2d at 855. The prisoner received credit for each day worked, which served to lessen the duration of his imprisonment. *Id.* Here, Claimant worked under a voluntary work-release program and his wages were credited to his account. In *Scott,* the prisoner entered into an agreement with the court. Here, Claimant entered into a contract with Sierra Blanca, a private company. *See Republic–Franklin Ins. Co. v. City of Amherst,* 50 Ohio St.3d 212, 553 N.E.2d 614, 618 (1990) ("A person who consents to perform community service in lieu of sentence enters into an agreement with the court, not the agency where the work is performed."). The facts in *Scott* are thus distinguishable from the facts in this appeal.

15. Claimant was not compelled to work at Sierra Blanca, but neither was he precluded from entering into a valid agreement because of his status as a prisoner. He voluntarily agreed to perform specific tasks at the job site in exchange for payment of $4.35 per hour. We thus conclude that an implied employment contract existed between Claimant and Sierra Blanca.

## 2. Casual Employment And Purpose

16. The second, more involved analysis under Section 52–1–16 is whether the work performed by Claimant was (1) purely casual and (2) not for the purpose of the employer's trade or business.

■ 17. Our analysis now brings into play the third important section of the Act we noted earlier. Section 52–1–22, entitled "Work not casual employment," states:

[U]nless the context otherwise requires, where any employer procures any work to be done wholly or in part for him by a contractor other than an independent con-tractor and the work so procured to be done is a part or process in the trade or business or undertaking of such employer, then such employer shall be liable. . . .

18. Application of this section requires yet another two-step process. First, we must decide if Claimant is "a contractor other than an independent contractor." If so, we must then determine if the work performed by him was "a part or process in the trade or business or undertaking" of Sierra Blanca.

19. This Court has held that the primary purpose of Section 52–1–22 "is to make the general or prime contractor liable for compensation benefits to employees of its sub-contractors." *See, e.g., Romero v. Shumate Constructors, Inc.,* 119 N.M. 58, 64, 888 P.2d 940, 946 (Ct.App.1994), *cert. granted,* 119 N.M. 21, 888 P.2d 467 (1995); *Rivera v. Sagebrush Sales, Inc.,* 118 N.M. 676, 680, 884 P.2d 832, 836 (Ct.App.), *cert. denied,* 118 N.M. 585, 883 P.2d 1282 (1994). In doing so, *Romero* and *Rivera* implicitly construed "contractor," as used in Section 52–1–22, as comprising a "subcontractor." *Id.* However, this Court in *Abbott v. Donathon,* 86 N.M. 477, 525 P.2d 404 (Ct.App.1974), indicated that a "contractor," for purposes of the predecessor statute to this section, could also include an individual employee who enters into a contract of·hire. *Id.* at 479, 525 P.2d at 406. Because we have already established that an implied contract for hire existed between Claimant and Sierra Blanca, it follows that Claimant is a contractor under Section 52–1–22.

■ 20. We must next decide whether Claimant is an *independent* contractor so as to warrant exclusion from coverage under Section 52–1–22. In *Romero,* this court set out the applicable test. First, we must analyze whether the contractor meets the "right to control" test. *Romero,* 119 N.M. at 67, 888 P.2d at 949. If that test indicates independence on the part of the contractor, then the court must apply the "relative nature" test. *Id.* If, however, no independence is apparent in the "right to control" test, the contractor is not independent and there is no need to apply the "relative nature" test. *Id.*

21. Professor Larson notes four factors tending to establish right of control: (1) direct evidence of the right or exercise of control; (2) the method of payment; (3) furnishing of equipment; and (4) the right to fire. 1B Arthur Larson, *The Law of Workmen's Compensation* § 44.31 (1995). Because New Mexico has adopted the principle of placing a higher burden on the party attempting to prove an independent contractor relationship, Claimant would not be an independent contractor unless he fulfills each of the four requirements. *See Romero*, 119 N.M. at 68, 888 P.2d at 950.

22. Sierra Blanca told Claimant not only what jobs needed to be done, but also, with respect to the overhead door, exactly how to perform the job. Both parties agree that Sierra Blanca directed Claimant's work on the day of Claimant's injury. Claimant was not paid in a lump sum, but instead by an hourly rate, indicating an employer-employee type relationship. *See id.* Sierra Blanca also provided the equipment necessary for Claimant to do his job. This fact reinforces the determination that Claimant did not have the right to control his work. We consider irrelevant to our analysis the fact that Sierra Blanca did not deduct any payroll taxes or take any other deductions from the earnings of work-release laborers, although that fact may raise other legal issues. We conclude, as a matter of law, that Claimant was not an independent contractor.

23. Claimant thus satisfies the first part of Section 52–1–22. We now focus on the second part—was the work performed by Claimant "a part or process in the trade or business or undertaking" of Sierra Blanca? This Court has defined "undertaking" as " 'a business, work, or project [that] one engages in or attempts.' " *Abbott*, 86 N.M. at 479, 525 P.2d at 406, quoting Webster's Third New International Dictionary 2491 (1966). Initially, we note that our Court has read this term expansively. *Romero*, 119 N.M. at 70, 888 P.2d at 952. This is consistent with our earlier jurisprudence, as well as the generally accepted concept that the employer's main "trade or business" cannot be long maintained without related but peripheral activities. *Bailey v. Farr*, 66 N.M. 162, 164–65,

344 P.2d 173, 174 (1959) (ranching requires water, which necessitates windmills). *See generally* 1 C Arthur Larson, *The Law of Workmen's Compensation* § 51.23 (1995) (repairs are an inherent part of carrying on an enterprise). This principle has been specifically applied where the employer was remodeling a business facility. *See, e.g., Fincham v. Wendt*, 59 Or.App. 416, 651 P.2d 159 (1982) (employee hired to expand fruit farmer's cold storage room entitled to compensation); *Royal Indem. Co. v. Industrial Comm'n*, 105 Colo. 25, 94 P.2d 697 (1939) (carpenter injured while remodeling grocery warehouse entitled to compensation).

24. In *Abbott*, the decedent was hauling dirt for a plumbing and heating company when the bed of his truck collapsed, killing him. The company claimed that the decedent was engaged in a project (deepening of an irrigation pond) not normally in its trade of plumbing and heating. *Abbott* held that, although the project may not have been in the normal trade or business of the company, it was sufficient to constitute an undertaking of the business for purposes of the Act. *Abbott*, 86 N.M. at 479, 525 P.2d at 406.

25. Here, for over a month, Claimant operated concrete saws, took down doors, and, along with the other prisoners, helped demolish one of Sierra Blanca's buildings to prepare it for remodeling. Although the reconstruction project may not have been in the normal trade or business of Sierra Blanca, it was similar to construction projects employees of Sierra Blanca had completed in the past. We thus determine that Claimant was engaged in an undertaking of Sierra Blanca and need not explore trade or business as separate concepts. *See Abbott*, 86 N.M. at 479, 525 P.2d at 406 ("Since the work to be done was an 'undertaking' we are not concerned with trade or business as separate concepts.").

26. Claimant has therefore fulfilled the requirements of Section 52–1–22 because his work did not constitute casual employment under Section 52–1–22 or 52–1–16, and he was involved in an undertaking of Sierra Blanca. Consequently, an employer-employee relationship existed under the Act. As a matter of law, Claimant would be entitled to

workers' compensation benefits for his injury.

### C. Other Considerations

27. As a final note, we believe that our holding is buttressed by two other considerations.

■ 28. First, NMSA1978, Section 33–2–47 (Repl.Pamp.1990) provides that "[a] prisoner working under the inmate-release program is not entitled to any benefits under the Employment Security Act during the term of his sentence." We believe that, had the legislature intended to preclude prisoners from entitlement to workers' compensation benefits, it could have easily provided for such preclusion in enacting Section 33–2–47. *See, e.g., Bettini v. City of Las Cruces,* 82 N.M. 633, 635, 485 P.2d 967, 969 (1971) (*expressio unius est exclusio alterius*).

■ 29. Second, the New Mexico Constitution strictly prohibits the leasing of contract labor. *See* N.M. Const. art. XX, § 18 ("The leasing of convict labor by the state is hereby prohibited."). It follows that any legislative design of the inmate release program, of which Claimant availed himself, must comport to the constitutional proscription under Article XX, Section 18 of our state's constitution. To pass constitutional muster, the program must necessarily provide, even if only implicitly, that any prisoners working for private enterprise must act on their own accord, irrespective of their status as prisoners.

### III. CONCLUSION

30. For these reasons, we hold, as a matter of law, that Claimant was an employee of Sierra Blanca and was thus entitled to workers' compensation benefits. We therefore reverse the order granting summary judgment to Sierra Blanca and denying Claimant's cross-motion for summary judgment. Because Claimant does not now dispute the propriety of the order granting summary judgment to the Department, the order granting summary judgment to the Department is affirmed. On remand, the judge, in awarding benefits to Claimant, shall provide for Claimant's attorney fees on appeal.

31. **IT IS SO ORDERED.**

DONNELLY and BLACK, JJ., concur.