922 P.2d 1205

Jose Ventura BENAVIDEZ,
Respondent–Appellant,

v.

SIERRA BLANCA MOTORS,
Petitioner–Appellee.

No. 23320.

Supreme Court of New Mexico.

July 11, 1996.

Pelton & O'Brien, P.A., David L. Skinner, Albuquerque, for Petitioner–Appellee.

Warren F. Reynolds, P.A., Vernon O.M. Henning, Hobbs, for Respondent–Appellant.

## OPINION

MINZNER, Justice.

Jose Ventura Benavidez, an inmate at the Roswell Correctional Center (the RCC), sought workers' compensation benefits for injuries he sustained while participating in an inmate-release program at Sierra Blanca Motors. Upon cross-motions for summary judgment, the workers' compensation judge held that Benavidez's status as a prisoner precluded his receipt of benefits and granted summary judgment in favor of Sierra Blanca. The Court of Appeals reversed the judge's grant of summary judgment to Sierra Blanca, concluding as a matter of law that Benavidez was Sierra Blanca's employee and therefore entitled to receive workers' compensation benefits. *Benavidez v. Sierra Blanca Motors,* 120 N.M. 837, 907 P.2d 1018 (Ct.App.), *cert. granted,* 120 N.M. 828, 907 P.2d 1009 (1995).

We accepted certiorari to address the question whether a prisoner participating in an inmate-release program who is injured while performing work at a private jobsite may be considered an employee of that private business entitled to workers' compensation benefits under the New Mexico Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (Repl.Pamp.1991 & Cum.Supp. 1995). *See Scott v. City of Hobbs,* 69 N.M. 330, 332, 366 P.2d 854, 856 (1961) (holding that prisoner who worked for city under ordinance requiring that judges order physically-fit prisoners to work in return for credit on fines not entitled to workers' compensation benefits for injuries sustained by him while working for city). We hold that Benavidez's status as a prisoner did not preclude the existence of an employer-employee relationship with Sierra Blanca for the purpose of receiving workers' compensation benefits. To the extent *Scott* is inconsistent with that holding, it is overruled.

We also hold that whether Benavidez was an employee of Sierra Blanca for the purpose of receiving workers' compensation benefits depends on the particular relationship he had with Sierra Blanca. This case was resolved on cross-motions for summary judgment, and the resulting record does not contain sufficient stipulated facts or other undisputed evidence to support determination of Benavidez's status as a matter of law. We thus affirm the Court of Appeals in reversing summary judgment in favor of Sierra Blanca, but we reverse the Court of Appeals in granting Benavidez summary judgment. We remand this cause to the Workers' Compensation Administration for further factual inquiry regarding the nature of the relationship between Benavidez and Sierra Blanca and entry of an appropriate judgment.

## FACTS

Sierra Blanca Motors—a private business enterprise in Roswell, New Mexico, that sells and services automobiles—planned to demolish and prepare for remodeling one of the buildings located on its property. Sierra Blanca contacted the RCC to request the services of several inmates to work on its demolition and reconstruction crew. Benavidez was one of the prisoners who volunteered to participate in the project through the RCC's inmate work-release program.

Sierra Blanca supervised and provided equipment to the prisoners. It kept daily payroll records and paid their wages directly to the RCC, although it did not withhold payroll taxes or make any other deductions. The RCC deposited each inmate's net wages

into the inmates' individual accounts after deducting the costs of each inmate's participation in the work-release program and certain costs of their confinement.

Over a month after Benavidez had been working at the jobsite, a Sierra Blanca supervisor directed him to dismantle an overhead door. While working on the door from a ladder Benavidez fell and was injured. His initial complaint requested temporary total disability, permanent partial disability, and medical benefits against both the Department of Corrections, which administers the RCC, and Sierra Blanca. However, Benavidez filed his cross-motion for summary judgment solely against Sierra Blanca.

The judge determined that the following facts were undisputed: (1) Benavidez was injured when he fell from a ladder while working on a remodeling project; (2) Sierra Blanca directed the work being performed by Benavidez; (3) Benavidez was a prisoner at the RCC on the date of the accident; (4) Benavidez was participating in a work-release program administered by the RCC on the date of the accident; and (5) Benavidez's status on the date of the accident, while engaged in the RCC work-release program, was that of a volunteer. *Benavidez*, 120 N.M. at 839, 907 P.2d at 1020. Based on the undisputed facts the judge concluded that Benavidez was not an employee and granted summary judgment both to Sierra Blanca and the Department.

Benavidez appealed. On appeal he conceded that he was not an employee of the Department, and the Court of Appeals affirmed the order granting summary judgment to the Department. The Court of Appeals reversed the order granting summary judgment to Sierra Blanca and denying Benavidez's cross-motion for summary judgment. The Court of Appeals distinguished *Scott* and, relying in part on *Romero v. Shumate Constructors, Inc.*, 119 N.M. 58, 888 P.2d 940 (Ct.App.1994), *rev'd in part and aff'd in part, Harger v. Structural Services, Inc.*, 121 N.M. 657, 916 P.2d 1324 (1996), held that Benavidez was an employee of Sierra Blanca and entitled to workers' compensation benefits as a matter of law. We affirm in

part, reverse in part, and remand for further proceedings.

## DISCUSSION

■ The Workers' Compensation Act provides that "every private person, firm or corporation engaged in carrying on for the purpose of business or trade within this state ... shall become liable to and shall pay to any such worker injured by accident arising out of and in the course of his employment ... compensation." Section 52–1–2. Section 52–1–16(A) defines "worker" as "any person who has entered into the employment of or works under contract of service or apprenticeship with an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business." Relying in part on *Scott*, Sierra Blanca argues that the requisite employment contract could not be formed as a matter of law and alternatively argues no contract was formed in fact. After discussing the relevance of *Scott* we consider Sierra Blanca's other arguments.

## THE RELEVANCE OF *SCOTT*

■ New Mexico courts have long recognized that an essential element of establishing a contract of hire is an agreement whereby the worker receives wages in exchange for labor. *Joyce v. Pecos Benedictine Monastery*, 119 N.M. 764, 767, 895 P.2d 286, 289 (Ct.App.1995); *Jelso v. World Balloon Corp.*, 97 N.M. 164, 168, 637 P.2d 846, 850 (Ct.App. 1981). "[T]here must be mutual assent, express or implied." *Joyce*, 119 N.M. at 767, 895 P.2d at 289. Sierra Blanca argues that a valid employer-employee relationship requires mutuality lacking on these facts. Sierra Blanca reasons that Benavidez was obligated to provide labor by virtue of his status as a prisoner and that its obligation ran to the Department of Corrections. Sierra Blanca relies on *Scott* and analogous precedent from other jurisdictions for the proposition that Benavidez's obligation to provide labor was not voluntary.

In *Scott* the inmate-claimant worked for the city pursuant to an ordinance allowing a judge to order physically-fit prisoners to perform work. The inmate-claimant was not

paid wages for the work performed; instead, he received monetary credit against a fine imposed for his charged crime. While working on a city street, the claimant sustained an injury and consequently sought workers' compensation benefits. This Court affirmed the denial of compensation, holding that "[s]o long as his status was that of a prisoner, there could not exist the employer-employee relationship resulting from a contract of hire as contemplated by the Act." *Scott*, 69 N.M. at 331, 366 P.2d at 855. The *Scott* Court relied on Professor Larson's workers' compensation treatise, which had stated at that time " 'a convict cannot and does not make a true contract of hire.' " *Id.* (quoting 1 *Larson's Workmen's Compensation Law*, § 47.31 (1952)).

Under the same rationale, courts have denied workers' compensation benefits to prisoners when the nature of the work relationship is not voluntary, or when other circumstances preclude the formation of a contract of hire. The Virginia Supreme Court in *Commonwealth v. Woodward*, 249 Va. 21, 452 S.E.2d 656, 658 (1995), denied benefits to a prisoner because prisoners "not on a work release program" are incapable of making "a true contract of hire with the authorities by whom he is confined." Likewise, in *Republic–Franklin Insurance Co. v. City of Amherst*, 50 Ohio St.3d 212, 553 N.E.2d 614 (1990), the Ohio Supreme Court denied benefits to an individual injured while performing community service in lieu of a jail sentence. The court held that a community-service worker cannot be considered an "employee," reasoning there is no express or implied contract of hire between the parties because one "who consents to perform community service in lieu of sentence enters into an agreement with the court, not the agency where the work is performed." *Id.* 553 N.E.2d at 618.

Because it is undisputed that Benavidez was a prisoner at the time of the accident, the judge might have granted Sierra Blanca summary judgment on the basis that *Scott* barred Benavidez's recovery. The judge might have concluded that similar authority from other jurisdictions represented the majority view. The Court of Appeals distinguished *Scott* on its facts. We agree that *Scott* is distinguishable on its facts. The statutory scheme under which Benavidez was employed requires a different analysis than the ordinance at issue in *Scott*.

Since *Scott* was decided the New Mexico Legislature has enacted a penitentiary inmate-release program whereby certain eligible inmates may contract to work for private entities seeking to procure prisoner labor. *See* NMSA 1978, §§ 33–2–43 to –47 (Repl. Pamp.1990) (enacted by 1969 N.M.Laws, ch. 166, § 1). Under the program, inmates meeting statutorily-defined standards may venture beyond the penitentiary "to work at paid employment in private business." Section 33–2–44. While participation in the program is voluntary, Section 33–2–43(D), those who choose to work must be compensated for their efforts at not less than prevailing market rates and must be provided with similar conditions of employment as regular employees. Section 33–2–43(B). In turn, participants are required to pay the State for appropriate and reasonable costs incident to administering the program and for their confinement. Section 33–2–43(C).

The New Mexico Constitution, Article XX, Section 18, prohibits the State from leasing convict labor for its own remuneration. *Cf.* N.M. Const. Art. XX, § 15 (requiring prisoner's net earnings from employment in beneficial industry to be paid to dependent family for their support). Thus we agree with the Court of Appeals that "[t]o pass constitutional muster, the program must necessarily provide, even if only implicitly, that any prisoners working for private enterprise must act on their own accord, irrespective of their status as prisoners." *Benavidez*, 120 N.M. at 843, 907 P.2d at 1024.

In fact, Section 33–2–43(D) characterizes participants as "volunteers." Further, Section 33–2–47, which describes the conditions of employment of the inmate-release program, states: "No prisoner under the provisions of the inmate-release program is an agent, employee or involuntary servant of the penitentiary of New Mexico while attending school, working in private business or going to or from such assignment." Under the statutory scheme, inmate-release volunteers

act for their own benefit, subject to certain restrictions inherent in their status as prisoners. *Id.* *Scott* is therefore distinguishable because the ordinance at issue there allowed community service to be involuntarily imposed on any physically-fit prisoner who could not pay the fine that accompanied his or her sentence, whereas · the statutory scheme at issue here allows prisoners to volunteer to work for private employers at going market rates. Sierra Blanca has argued that this scheme conflicts with more general provisions regarding prison labor. We next address this contention.

## WHETHER THE CORRECTIONS INDUSTRIES ACT CONFLICTS WITH THE NEW MEXICO INMATE–RELEASE PROGRAM

Sierra Blanca contends that as a convicted felon, Benavidez had a statutory obligation to provide labor for the State's benefit under Section 33–8–4, a provision of the Corrections Industries Act, NMSA 1978, §§ 33–8–1 to – 15 (Repl.Pamp.1990 & Cum.Supp.1995). Therefore, he could not have voluntarily formed a contract of hire to work under Section 33–2–43. Sierra Blanca, in essence, reads two statutory schemes as being in conflict. We conclude they are not in conflict.

■■■ When interpreting a statute, its provisions must be read together with other statutes relating to the same subject to ascertain legislative intent. *Quintana v. New Mexico Dep't of Corrections*, 100 N.M. 224, 225, 668 P.2d 1101, 1102 (1983), *rev'd on other grounds, Devine v. New Mexico Dep't of Corrections*, 866 F.2d 339 (10th Cir.1989). We presume that the Legislature is well informed regarding existing statutory and common law and does not intend to enact a nullity. We also presume that the Legislature intends to change existing law when it enacts a new statute. *State ex rel. Bird v. Apodaca*, 91 N.M. 279, 284, 573 P.2d 213, 218 (1977). Therefore, when several statutes relate to the same subject matter, we will, if possible, construe them so as to give effect to every relevant provision.

Section 33–8–4 of the Corrections Industries Act provides in pertinent part: "All persons convicted of crime and confined in a facility ... shall perform labor under such rules and regulations as have been or may hereafter be prescribed by the department." Section 33–8–4 serves to "enhance the rehabilitation, education and vocational skills of inmates through productive involvement in enterprises ... to minimize inmate idleness." Section 33–8–3. Similarly, Section 33–2–43 provides an avenue for the State to foster the rehabilitative aspect of incarceration by allowing eligible inmates the opportunity to prepare themselves to become productive members of society upon their release from confinement. Pursuant to the statutory provisions governing the inmate-release program, however, prisoners must accept their responsibility as participants voluntarily; accordingly, there is no language in the statutory scheme that mandates participation. · In fact, the Legislature explicitly provided that only certain eligible inmates are allowed to participate in the program. *See* § 33–2–44 ("trusty or minimum-custody inmate" with "physical and mental ability to fully perform" who is "not afflicted with any serious emotional or personality defect," who "has not been convicted of a crime involving assaultive sexual conduct nor violence to a child, nor has been linked with organized criminal activity" and would not likely "evoke an adverse public reaction by his presence in the community").

We conclude the two statutory schemes do not conflict. We conclude that prisoners may legally enter into voluntary contracts of hire under the inmate-release program.

## WHETHER PUBLIC POLICY REQUIRES A DIFFERENT RESULT

Sierra Blanca argues that even if we conclude that prisoners may enter contracts of hire, "denial of workers' compensation benefits to incarcerated felons furthers sound public policy." Sierra Blanca notes that the Workers' Compensation Act is premised on "freedom to act, freedom to contract, and a theory of wage replacement," and contends that these concepts are not relevant to this case. *See, e.g., Tackett v. Lagrange Penitentiary*, 524 S.W.2d 468, 469 (Ky.Ct.App.1975)

(characterizing prison labor as the antithesis of voluntary employment). Sierra Blanca also suggests that differences between prisoners and other workers complicate the application of the Workers' Compensation Act to the present facts. *See, e.g., Jeffrey v. Hays Plumbing & Heating,* 118 N.M. 60, 63–64, 878 P.2d 1009, 1012–13 (Ct.App.1994) (discussing an employer's opportunity to reduce liability by offering modified work after maximum medical improvement). However, according to Professor Larson, "[t]here has been a greater inclination to find employee status for prisoners when, instead of merely working within the prison, they have been lent to other state agencies or even private employers." 1B Arthur Larson, *The Law of Workmen's Compensation,* § 47.31(d) (1995). This trend suggests that the differences in status between inmates released to work under the statutory scheme at issue in this case and other workers do not present insurmountable obstacles and that public policy varies from state to state.

Other jurisdictions that have recently confronted this issue have found dispositive the individual's voluntary entry into a work alliance that is similar to employment relationships contemplated under relevant workers' compensation laws. Accordingly, in *Hamilton v. Daniel International Corp.,* 273 S.C. 409, 257 S.E.2d 157 (1979), the South Carolina Supreme Court recognized that an inmate participating in a work-release program was able to acquire all the rights and liabilities of a private employee because he voluntarily entered into an employment contract and enjoyed the same salary and working conditions as other employees. As such, the court found that the claimant "transcended his prisoner status and became a private employee entitled to work[ers'] compensation benefits." *Id.* 257 S.E.2d at 158. Similarly, in *Courtesy Construction Corp. v. Derscha,* 431 So.2d 232 (Fla.Dist.Ct.App.1983), the Florida District Court of Appeal made workers' compensation applicable to work-release prisoners engaged to work in private enterprise since compensation paid to the workers by private businesses renders those businesses "'employers' in every practical sense of the word." *Id.* at 232–33. Finally, in *Barnard v. State,* 642 A.2d 808 (Del.Su-

per.Ct.1992), a Delaware Superior Court granted benefits to an inmate, finding that he qualified as an employee under Delaware's workers' compensation statutes; the court found it noteworthy that "when an inmate voluntarily applies for a job outside the prison grounds, when the employer chooses to hire him, pays his wages, offers him work at considerable risk to himself, and benefits substantially from his services, that inmate is an employee pursuant to [Delaware workers' compensation law]." *Id.* at 819.

■ These cases reveal a trend toward treating work-release prisoners like other workers as a matter of law when on all relevant facts they are indistinguishable from those other workers. This trend furthers one of the most basic principles of the common law: like cases will be treated alike. The ultimate policy issue in this case is whether prisoners released to work under the inmate-release program are similarly situated to other workers for purposes of workers' compensation. We note that "it is the particular domain of the legislature, as the voice of the people, to make public policy.... Courts should make policy ... only when the body politic has not spoken...." *Torres v. State,* 119 N.M. 609, 612, 894 P.2d 386, 389 (1995).

Here, the Legislature, as the architect of public policy, has created an employment program for inmates. The Legislature has specifically described the work relationship between work-release prisoners and the private businesses that engage them as "employment," Sections 33–2–43, –44, –47, and the entities procuring prison labor as "employers," Section 33–2–45. The New Mexico Workers' Compensation Act covers "any person who has entered into the employment of or works under contract of service or apprenticeship with an employer." Section 52–1–16(A). Under the statutory scheme, the relationship between an inmate and an entity for whom that inmate works is characterized in such a way that the Workers' Compensation Act applies. *See* § 52–1–16(A) (defining "worker"). The statutory scheme creating the work-release program includes an express exclusion of benefits under the Employment Security Act. Section 33–2–47.

"A prisoner working under the inmate-release program is not entitled to any benefits under the Employment Security Act." *Id.* It contains no other exclusion. We conclude the Legislature has resolved the public policy issue and determined that Benavidez's status is not sufficient to preclude coverage. We hold that Benavidez's status did not bar the formation of an employer-employee relationship between him and Sierra Blanca. To the extent that *Scott* is inconsistent with this opinion, it is hereby overruled. We next address Sierra Blanca's argument that Benavidez was not an employee as a matter of fact.

## BENAVIDEZ'S STATUS AS AN EMPLOYEE OF SIERRA BLANCA

■ Sierra Blanca also contends that its relationship with Benavidez failed to meet the requirements of a conventional employer-employee test because Sierra Blanca did not directly pay Benavidez his wages. Sierra Blanca contends that its obligation to pay for the labor Benavidez performed was owed to the RCC, not to the worker; therefore, no employer-employee relationship existed. We do not find that fact dispositive.

■ In determining the existence of an employer-employee relationship, no one single factor is decisive; rather, all relevant circumstances must be considered. *See Barnard,* 642 A.2d at 813. The Court of Appeals determined that Benavidez was in an employer-employee relationship with Sierra Blanca as a matter of law, relying on its analysis in *Romero,* which we have since reversed in part. *See Harger,* 121 N.M. at 670, 916 P.2d at 1337. We conclude that remand for further factual inquiry is appropriate on the issues presented by Benavidez's motion for summary judgment. Although Benavidez enjoyed the same salary and working conditions as other similarly-situated employees of Sierra Blanca, it is not certain whether Sierra Blanca differentiated inmate-release participants from its regular employees aside from providing them the same working conditions required by law. Because we hold that all circumstances surrounding the nature of an employment relationship must be considered in determining whether an inmate-release participant qualifies as an employee covered under the Workers' Compensation Act, *see Barnard,* 642 A.2d at 813, we remand to the Workers' Compensation Administration for further factual inquiry.

## CONCLUSION

It is undisputed that Benavidez was permitted to enter into a voluntary labor agreement with Sierra Blanca pursuant to the statutory provisions governing the inmate-release program. It is also undisputed that the RCC contracted directly with Sierra Blanca for labor to be performed at its jobsite. Benavidez was injured during the scope of his participation in the prison inmate-release program at Sierra Blanca while under Sierra Blanca's supervision. Benavidez's status as an inmate does not preclude the existence of an employer-employee relationship for the purpose of receiving workers' compensation benefits. To the extent *Scott* is inconsistent with that holding, it is overruled. However, whether Benavidez was an employee of Sierra Blanca for the purpose of receiving workers' compensation benefits depends on the particular relationship he had with Sierra Blanca. We affirm the Court of Appeals in granting summary judgment to the Department and in reversing summary judgment in favor of Sierra Blanca. We reverse the Court of Appeals in granting Benavidez summary judgment and remand for further proceedings. No costs are awarded. On remand the judge shall provide for Benavidez's attorney fees on appeal in accordance with Section 52–1–54.

**IT IS SO ORDERED.**

RANSOM, J., and W. DANIEL SCHNEIDER, District Judge, sitting by designation, concur.