Appellants (appellees below), Linkscorp, Inc., dba Rickenbacker Golf Course ("Rickenbacker") and the Administrator of the Bureau of Workers' Compensation ("BWC"), appeal from the judgment of the Franklin County Court of Common Pleas in favor of appellee (appellant below), Paul Anderson, in a workers' compensation appeal. For the reasons that follow, we affirm the judgment of the trial court.
Mr. Anderson sought to recover workers' compensation benefits for injuries he sustained while driving a golf cart on Rickenbacker's premises. The Industrial Commission of Ohio disallowed Anderson's claim. Anderson filed an appeal and complaint with the Franklin County Court of Common Pleas. The case was tried to the court, and the trial court found that Anderson was an employee of Rickenbacker at the time of his injury. The trial court also held that Anderson was injured in the course of and arising out of his employment with Rickenbacker.
Rickenbacker and the Administrator of the Bureau of Workers' Compensation appealed, assigning as error the following:
 1. "The court below erred in finding that Anderson was an employee, as there was no contract of hire, and Anderson's volunteer position as a ranger at a privately owned golf course is not included in the statutory definition of an employee."
 2. "The court below erred in finding that Anderson was within the course and scope of his volunteer position at the time of his accident."
The facts of this case are largely undisputed. Mr. Anderson retired from the appliance-repair business in 1993 at the age of sixty-five to, in his words, "play golf." Anderson had a friend who asked if Anderson would be interested in working at Rickenbacker as a ranger. At Rickenbacker, rangers had a variety of duties including assisting the starters, policing the course, enforcing the rules, and keeping play moving. After talking with the head ranger, Anderson got the job.
As a ranger, some of Anderson's other duties were to pick up the rules of the day at the pro shop, patrol the course in a specially designated "ranger cart," assist players in case of emergencies, pick up litter, rake sand traps, repair ball marks on greens, and make sure the players wore shirts and kept their carts on the designated areas. Rangers wore special caps that said "Marshall." They also had jackets with "Marshall" on the front and back. On weekends, the rangers carried two-way radios.
When not scheduled to work, rangers could play unlimited free golf. In addition, rangers had free use of a golf cart, free use of the driving range, received free beverages, and a fifty percent discount on food. There was no written contract between Rickenbacker and the rangers, but there was a written schedule created by the head ranger and a written checklist of ranger duties. Rangers did not receive paychecks from Rickenbacker, and Rickenbacker did not provide any insurance or retirement benefits. On his income tax returns, Anderson did not report any income from Rickenbacker.
On the day of the accident, Anderson was not scheduled to work as a ranger but went to the course to play golf for free. He was wearing his Marshall cap but not the Marshall jacket. Anderson stopped by the clubhouse to find out the rules for the day. He was told the fairways were newly seeded and he was to keep the players, including himself, off the fairways with their carts. Anderson took a ranger cart and started playing golf on the back nine. He played the tenth through thirteenth holes.
On the fourteenth hole, a par five, Anderson hit his third shot on the green eight feet from the pin. While going to get back in his cart, Anderson saw a golfer with a female companion driving his cart at full speed through the rough. Anderson testified that at that point:
 "* * * I was concerned he was going to go on the fairway. So I can't see because of the row of trees so I had to go out to the left — the trees are separate — so I can see what he is going to do.
 "On this particular fairway they have planted three trees about fifty yards apart along the cart path. I forgot they were there. So I'm driving, watching him to see what he's going to do. If he had stayed in the rough and went behind the green, I was not going to say nothing to him. If he proceeded across the fairway, I'm going to go get him.
 "And so in the procedure of going out, looking at him, bang, I hit this tree dead center. Didn't see it. Didn't know it was coming. Took the full blunt, stomach and chest." (Tr. 10-11.)
In their first assignment of error, appellants argue that Anderson was not an employee covered under the Workers' Compensation Act since he was strictly a volunteer and was not under any contract of hire. Anderson disagrees, contending that he was an employee and not a volunteer because he received remuneration in exchange for services rendered under an express or implied contract.
In reviewing the trial court's determination of the right to participate in the Workers' Compensation Fund, we must determine whether the trial court abused its discretion as to issues of fact; however, we conduct a de novo review on issues of law. Harding v. Conrad (1997), 121 Ohio App.3d 598, 600. It is axiomatic that only employees qualified under the terms and conditions of the Workers' Compensation Act are entitled to receive compensation and benefits. "Employee" is defined in R.C. 4123.01(A)(1) as:
 "(a) Every person in the service of the state, or of any county, municipal corporation, township, or school district therein, including regular members of lawfully constituted police and fire departments of municipal corporations and townships, whether paid or volunteer, * * *
 "(b) Every person in the service of any person, firm, or private corporation, including any public service corporation, that (i) employs one or more persons regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, * * * or (ii) is bound by any such contract of hire or by any other written contract, to pay into the state insurance fund the premiums provided by this chapter."
The Ohio Supreme Court has indicated that in analyzing whether an individual has met the statutory definition of an employee, the proper focus is whether the service is performed under a contract of hire, either express or implied.Republic-Franklin Ins. Co. v. Amherst (1990), 50 Ohio St.3d 212,214. Reviewing the applicable law and the facts of this case, we conclude that the trial court was correct in finding an employment relationship between Anderson and Rickenbacker.
The trial court in its judgment entry of March 19, 1998, made the following findings:
 "1) That on October 9, 1995, Plaintiff was employed by Defendant Linkscorp, Inc. as a marshall/ranger.
 "2) That there was an expressed and implied contract of employment with consideration.
 "3) That the consideration Plaintiff received was unlimited free golf, free use of a golf cart, free use of Defendant's driving range, and a fifty (50) percent discount on all food and beverages purchased at Defendant's facilities known as 'Rickenbacker Golf Club.'
 "4) That the consideration for Defendant Linkscorp, Inc. was that the Plaintiff would 'police' the golf course and enforce its rules for the golf course."
Based on the evidence before the trial court, the trial court correctly concluded that a contract of hire existed because Anderson entered into an agreement with Rickenbacker to police the golf course and enforce its rules in exchange for remuneration in the form of free golf, free use of a golf cart, free use of the driving range, and discounted food and beverages. Anderson presented evidence that green fees and a cart were worth about $24, an annual rate to play unlimited golf was approximately $650, and a bucket of balls was $2.50.
The evidence showed that Anderson received instructions from the clubhouse pro shop as to the rules of the day and was there to enforce the rules whether he was scheduled as a ranger or was merely playing golf for free. Even on his days off, Anderson took orders from the clubhouse to move golf carts or take them to the battery charger. The trial court's finding that Anderson was an employee under a contract of hire is supported by the evidence in the record, and is in accordance with law and, accordingly, the first assignment of error is not well-taken.
In their second assignment of error, Rickenbacker and BWC argue that even if Anderson were an employee, he did not receive his injury in the course of and arising out of the scope of his employment. Specifically, Rickenbacker and BWC contend that the trial court erred in finding that Anderson had deviated from his recreational pursuit into his employment at the time of the accident. Anderson counters that the evidence shows that he was within the course of his employment. Anderson argues that even on his days off when playing golf, he used a ranger cart, and was expected to police the course, enforce the rules, and follow the ranger check list. Anderson argues that he was viewing other golfers who he believed were not obeying the rules when the accident occurred.
Whether Anderson's injuries arose out of his employment is determined from the totality of the circumstances, using the factors set forth in the syllabus of Lord v. Daugherty (1981),66 Ohio St.2d 441, which states:
 "Whether there is a sufficient 'causal connection' between an employee's injury and his employment to justify the right to participate in the Worker's Compensation Fund depends on the totality of the facts and circumstances surrounding the accident, including, (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident."
In Raico v. Musial (June 30, 1993), Lake App. No. 92-L-132, unreported, the appellant, a golf course employee, was injured in a golf cart accident while taking advantage of the employer's policy which allowed employees to play free golf. The appellant filed suit against his employer, who filed a motion for summary judgment alleging that the appellant had been injured in the course and scope of his employment and, accordingly, the appellant's only recourse was through the Workers' Compensation Act. The trial court granted the employer's motion for summary judgment, and on appeal the court of appeals inquired into the causal connection between the injury and the employment, looking at the factors set forth inLord, supra.
The court found the first two prongs of the test were met in that the accident occurred on the employer's premises and that the employer had control over the site of the injury. With respect to the third prong, the benefit received, the court held that the employer's policy of allowing employees to play golf for free, benefited the employer by producing heightened morale and job interest, as well as by attracting employees who were both knowledgeable and enthusiastic about golf.
Similarly, in this case, the evidence showed that the first two factors set forth in Lord, are met in that the accident occurred on Rickenbacker premises and that Rickenbacker had control of the site of the accident. With respect to the third factor, the evidence showed that even while playing golf for free the golf rangers provided substantial benefit to Rickenbacker. While playing golf using the ranger cart, they enforced the rules of the day and followed the checklist provided by Rickenbacker. On the day of the accident, Mr. Anderson went into the pro shop to find out the rules of the day. He was informed that Rickenbacker had just reseeded the grass and he was to keep people in carts off the fairways, including himself. (Tr. 9.) In considering the totality of the facts and circumstances of this case along with the appropriate analysis set forth in Lord, we find that the trial court was correct in finding that Anderson was in the course of his employment enforcing the rules of the course when the injury occurred. The second assignment of error is not well-taken.
For the foregoing reasons, appellants' two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and BRYANT, JJ., concur.